**MONROE COUNTY et al., Appellants,**

**v.**

**Rad ROUSE, Appellee.**

Court of Appeals of Kentucky.

Oct. 8, 1954.

Rehearing Denied Feb. 4, 1955.

Abe Carter, Tompkinsville, Marshall Funk, Bowling Green, Kentucky, for appellants.

Paul Carter, Tompkinsville, Paul R. Huddleston, Bowling Green, Kentucky, for appellee.

WADDILL, Commissioner.

The appellee, Rad Rouse, brought this action for damages for personal injuries against Monroe County and its fiscal court, O. L. Martin, an employee of the county, and the Blue Ridge Insurance Company, which had issued a policy to Monroe County covering, among other vehicles belonging to the county, a road grader which was operated by Martin. It was alleged that appellee's injuries were caused by the negligence of Martin while operating the road grader for the county. The issues were tried by the court without the intervention

of a jury, and judgment was rendered in favor of appellee in the sum of $7,432.90. From that judgment an appeal and a cross-appeal have been prosecuted to this Court.

The primary question confronting us is whether or not a county can be sued for the negligent acts of its employee when the county carries public liability insurance that does not contain a waiver of governmental immunity. Other questions that are raised on the appeal are whether or not, under the facts in the case, contributory negligence on the part of the appellee exists as a matter of law, and the matter of the sufficiency of the evidence to establish negligence on the part of the operator of the county's road grader. On cross-appeal it is urged that the court erred in not awarding appellee certain medical and hospital expenses which appellee claims were incurred as a result of his injury.

On July 24, 1951, the fiscal court of Monroe County, pursuant to KRS 67.180, purchased from the Blue Ridge Insurance Company a standard form combination public liability policy insuring the county against public liability that might result from the negligent operation of various vehicles used by the county, including a certain road grader. While the policy was in effect, the road grader in question was being operated by O. L. Martin, who, at the time, was acting within the scope of his authority as an agent and employee of Monroe County.

At the time in question the road grader was being used for the purpose of clearing out the west ditch of the Cyclone County Road which runs in a north-south direction. Appellee, although he was not employed by the county, was interested in having the road leading to his farm worked on, so he, and some other neighbors, were following the grader collecting rocks, roots and other debris off the road and throwing it across the ditch so that it would not be an impediment to traffic.

The grader proceeded along the ditch in a southerly direction to a point north of a small culvert and there came to a stop. The appellee and some of the other workers approached the cab of the grader and had a conversation with Martin, the grader operator. Just what this conversation was is a matter of dispute. The appellee testified that the conversation had to do with whether or not a certain part of the road south of the point where the grader was stopped had been prepared for grader work by the people who lived on the road. Martin admits this was discussed, but claims that he further informed those present that he intended to back the grader in a northerly direction for the purpose of making another drag through the ditch to make it deeper and wider.

Shortly after the conversation ended, the appellee and Luther Carter, another volunteer worker on the road, left the cab of the grader and walked to a point approximately ten feet behind the grader. According to appellee and his witnesses, the grader, suddenly and without warning, started backing, thereby causing the rear wheel of the grader to run over the appellee injuring him permanently.

The testimony of those persons present at the accident corroborated the appellee as to his version of the conversation with Martin while the vehicle was stopped and failed to corroborate Martin as to the details of how the accident occurred.

In Downing v. Mason County, 87 Ky. 208, 8 S.W. 264, the court held inter alia that a county is but an arm or branch of the state government, and is no more liable to be sued for injury or tort of its officers than the state. The common law gives no such right, and therefore, the right to maintain such an action can exist only by statute. Also, see, Forsythe v. Pendleton County, 205 Ky. 770, 266 S.W. 639, wherein it was said that the county was performing a governmental function in the maintenance of a public road. However, the common law rule in Kentucky in cases of this character has been modified by statute. KRS 67.180.

During the legislative session of 1944, the General Assembly authorized counties containing cities of certain classes

to purchase all kinds of insurance on its vehicles operated by the county to protect both the public and its employees. It was further provided that suits might be maintained against the county for the purpose of measuring the liability of the insurance carrier to the injured party for whose benefit the insurance policy was issued.

This statute, now codified as KRS 67.180, provides:

"(1) The fiscal court of each county containing a city of the second, fourth, fifth or sixth class may, in its discretion, for the protection of the public and its employes, appropriate county funds to purchase policies of insurance of all kinds deemed advisable, covering vehicles operated by the county, and compensation insurance covering employes of the county receiving injuries arising out of and in the course of employment.

"(2) Suits instituted on such policies may be maintained against the county only for the purpose of obtaining a judgment which when final shall measure the liability of the insurance carrier to the injured party for whose benefit the insurance policy was issued, but not to be enforced or collectible against the county or fiscal court, or the members thereof."

This statute, which is applicable to Monroe County, was obviously designed to make available to the county officials a way to ameliorate the severity of the common law doctrine of governmental immunity. We think the object and purpose of the statute was to permit the governing authorities of the county to purchase insurance and thereby waive its legal immunity from liability for the torts of its agents and employees. The provisions of the statute, when a county has purchased an insurance policy for the protection of the public, are mandatory and constitute a part of the policy as fully and as effectually as if written therein. Provisions of the policy designed to restrict liabilty within narrower limits, are in conflict with the broad and wholesome purposes of the statute, and are void.

The insurance policy in question should not be interpreted so narrowly or technically as to frustrate the obvious design of the statute under the authority of which the policy was issued, nor so as to relieve the insurer from liability fairly within its scope or spirit. Therefore, the defense of government immunity in this action is without merit.

While we deem the reasons assigned sufficient to disallow the appellant's defense of governmental immunity, it may also be pointed out that if the defense of governmental immunity was available to this insurance company there would be a serious question as to whether or not there would be any consideration moving from the insurance company to the county for the premiums paid on the policy. For after all, Monroe County took out this policy in conformity with the statute, and paid the premiums in order to gain insurance coverage for situations such as the one presented in this case.

■ It is conceded that appellee was permanently injured as a result of the accident. There is really little contention that the evidence was not sufficient to submit the case to the court on the issue of Martin's negligence. The line of conflict narrows to the point of whether the evidence introduced to sustain the appellee's cause did not also establish contributory negligence as a matter of law. Of course, appellee was charged with the duty of exercising ordinary care for his own safety. Here the specific question is whether the appellee knew or was informed by Martin that Martin was going to back the grader in a northerly direction for the purpose of making another drag through the ditch. According to appellee's testimony, which was corroborated by the other witnesses who heard the conversation, Martin did not say what Martin claims he said. In view of the conflicting evidence upon this point, we think the court was clearly authorized to decide the issue in appellee's favor. It should be remembered that in evaluating the testimony in this case the trial judge had the opportunity of observing

the witnesses as they spoke and could see all those things which men customarily and reasonably observe when they seek to assess the weight and value of such declarations.

On cross-appeal appellee complains that the trial court erred when it disallowed certain sums which appellee allegedly incurred for medical care and treatment for a mental illness which he claims resulted from the injuries sustained in the accident. We have examined the testimony concerning this claim and find no reason to reverse the judgment of the trial court in this respect.

Judgment affirmed.