LEXINGTON–FAYETTE URBAN COUNTY GOVERNMENT; Ron Herrington, Individually; Jim Woods, Individually; Walter Hall, Jr., Individually; and Howard Huggins, Individually, Appellants,

v.

Dora SMOLCIC; Bojan Jurdana; Vesna Vasicek; Davor Vasicek; Marijana Meculj; Cara Rodgers; and Riverfront Group, Inc., Appellees.

Dora Smolcic JURDANA; Bojan Jurdana; Davor Vasicek; and Marijana Meculj, Appellants,

v.

Cara RODGERS; The Riverfront Group, Inc.; and Lexington–Fayette Urban County Government, Appellees.

Nos. 2002–SC–0958–DG, 2002–SC–0972–DG.

Supreme Court of Kentucky.

Aug. 26, 2004.

Leslye M. Bowman, Tracy W. Jones, Lexington–Fayette Urban County Government, Department of Law, Lexington, Counsel for Lexington–Fayette Urban County Government; Ron Herrington; Jim Woods; Walter Hall, Jr.; and Howard Huggins.

E. Douglas Stephan, Bryan H. Beauman, Sturgill, Turner, Barker & Moloney, PLLC, Lexington, Counsel for Dora Jurdana (Now Jurdana); Bojan Jurdana; Vesna Vasicek; Davor Vasicek; and Marijana Meculj.

Guy R. Colson, Elizabeth S. Feamster, Fowler, Measle & Bell, LLP, Lexington, Counsel for Cara Rodgers.

Andrew N. Clooney, O'Bryan, Brown & Toner, Louisville, Counsel for Riverfront Group, Inc.

Opinion of the Court by Justice JOHNSTONE.

On April 28, 1998, Dora Jurdana, Marijana Meculj, and Vesna Vasicek were crossing, on foot, U.S. Route 27 at the intersection of Nicholasville Road and Moore Drive when they were struck by a vehicle driven by Cara Rodgers. U.S. Route 27 is part of the state highway system and is located in the Lexington–Fayette Urban County Government ("LFUCG"). Jurdana, Meculj, and Vasicek subsequently filed separate suits against Rodgers, LFUCG, and others. The individual suits were eventually consolidated into a single action. Jurdana, Meculj, and Vasicek later amended their complaints to include four individual employees of LFUCG as additional defendants.

The trial court dismissed LFUCG for liability purposes on grounds that it was entitled to sovereign immunity, but allowed it to remain in the suit for purposes of apportionment under KRS 411.182. The trial court also dismissed the claims against the individual employees on grounds that they were entitled to qualified official immunity. Further, the trial court granted Rodgers' motion in limine to exclude her guilty plea to the charge of driving while intoxicated. Finally, Jurdana, Meculj, and Vasicek also filed separate suits in the Kentucky Board of Claims against LFUCG and the Transportation Cabinet. After the Board of Claims dismissed the cases against LFUCG for lack of jurisdiction, Jurdana, Meculj, and Vasicek appealed the Board of Claims' decision to the trial court, which affirmed the Board of Claims' decision.

On appeal, the Court of Appeals affirmed the trial court in all respects, except for its decision regarding the individual governmental employees. The Court of Appeals held that the allegations against the employees concerned ministerial rather than discretionary acts, and, therefore, reversed the trial court's ruling that the employees were entitled to a qualified im-

munity defense. We accepted discretionary review.

On appeal to this Court, LFUCG raises two allegations of error: (1) the Court of Appeals erred in holding that it could remain in the case for purposes of apportionment, and (2) the Court of Appeals erred in holding that the individual employees were not entitled to a qualified immunity defense. In their appeal, Jurdana, Meculj, and Vasicek raise four allegations of error: (1) the Court of Appeals erred in holding that LFUCG is entitled to sovereign immunity, (2) the Court of Appeals erred in holding that KRS 67A.060 is constitutional, (3) the Court of Appeals erred in holding that fault could be apportioned against LFUCG, and (4) the Court of Appeals erred in holding that Rodgers' conditional guilty plea was not admissible.

We affirm the Court of Appeals' holdings that (1) LFUCG is entitled to sovereign immunity, (2) KRS 67A.060 is constitutional, and (3) Rodgers' conditional guilty plea is not admissible. We reverse the Court of Appeals' holding that fault can be apportioned against LFUCG. Further, we hold that the trial court erred in concluding that the allegations against the individual employees were discretionary. Because of the state of the record, we do not go as far as the Court of Appeals on this issue. Finally, we hold that the Board of Claims has no jurisdiction of this case under KRS 44.071 because LFUCG is not a "municipality."

**I. Sovereign Immunity**

Jurdana, Meculj, and Vasicek argue that LFUCG is neither a county nor a county government; that, rather, LFUCG is a new and different form of local government not anticipated by the Kentucky

Constitution. Thus, they argue that the question of LFUCG's immunity must be determined by applying the state agency test set forth in *Kentucky Center for the Arts v. Berns*, Ky., 801 S.W.2d 327 (1991). A necessary premise for their argument that LFUCG is not a county is that Fayette County no longer exists. The premise is false.

We firmly established the continued existence of Fayette County in *Holsclaw v. Stephens*, Ky., 507 S.W.2d 462 (1974):

> Counties are basic subdivisions of the Commonwealth. They too may be abolished by the General Assembly (Section 63 of the Constitution) but in that event the territory comprising the county must be added to an adjoining county or counties. Fayette County has not been abolished. It remains as a geographic entity which shall hereafter be governed locally by urban county government.

*Id.* at 475. In other words, the Kentucky Constitution mandates that the entire physical territory of the Commonwealth be subdivided into counties.[1] When LFUCG was formed, no new county was created nor was any of Fayette County's territory added to an adjoining county. Had that been the case, *Holsclaw* would have held that the formation of LFUCG was unconstitutional. *Holsclaw* also disposes of Jurdana, Meculj, and Vasicek's argument that the Fayette County government no longer exists.

*Holsclaw* makes clear that the urban county form of government is a new classification of *county government* created by the General Assembly. *Holsclaw* plainly states that "counties which adopt urban county government constitute a sep-

1. In fact, the existence of counties predates the Commonwealth itself. At the time Kentucky became a state, its entire landmass was comprised of nine counties. "Formation of Kentucky Counties," *Ky. Historical Society*, July 13, 2004, http://history.ky.gov/ Research/ FAQs_County_Formation.htm.

arate classification of counties." 507 S.W.2d at 477. Further, in its discussion of the reasonableness of urban county government as a classification of local government, *Holsclaw* focuses solely on the classification as it applies to counties:

> [T]he Constitution provides that where a general law can be made applicable no special law shall be enacted. Section 60 provides that the General Assembly shall not indirectly enact a special or local act by the repeal in part of a general act, or by exempting from the operation of a general act any city, town, district or county.
>
> KRS 67A.010-040 is a general act, not special, in that *it applies generally to all counties* except those which contain a city of the first class. At the present time it is applicable to one-hundred and nineteen counties.
>
> But since each of the one-hundred and nineteen counties is free to organize the structure of its local government, the possibility exists for one-hundred and nineteen different structural organizations administering the powers of local government. The spectre of one-hundred and nineteen different types of local governmental structure can comport with the idea of uniformity only if we recognize that urban county government is a separate classification of local government which is in itself a reasonable classification. We think such a classification is reasonable.

*Id.* at 472 (emphasis added). Finally, in *Holsclaw* we noted that while the creation of LFUCG extinguished all city government, it did not extinguish "units and functions of county government established by the Constitution, which theretofore existed in the county." *Holsclaw*, 507 S.W.2d at 474.

For the above reasons, we reaffirm our holding in *Holsclaw* that urban county governments constitute a new classification of county government. Therefore, we hold that LFUCG is entitled to sovereign immunity and affirm the Court of Appeals on this issue. *Accord Fields v. Lexington–Fayette Urban County Government*, Ky. App., 91 S.W.3d 110, 112 (2001); *Inco, Ltd. v. Lexington–Fayette Urban County Airport Bd.*, Ky.App., 705 S.W.2d 933, 934 (1985); *Hempel v. Lexington–Fayette Urban County Government*, Ky.App., 641 S.W.2d 51 (1982). This brings us to the question of waiver of immunity.

## II. Waiver of Sovereign Immunity

Kentucky counties are cloaked with sovereign immunity. *Monroe County v. Rouse*, Ky., 274 S.W.2d 477, 478 (1955). This immunity flows from the Commonwealth's inherent immunity by virtue of a Kentucky county's status as an arm or political subdivision of the Commonwealth. *Id.* And unlike municipal immunity, county immunity is not a creation of the courts and can only be waived by the General Assembly.[2] *Id.; see also Cullinan v. Jefferson County*, Ky., 418 S.W.2d 407, 409 (1967), *overruled on other grounds by Yanero v. Davis*, Ky., 65 S.W.3d 510, 527 (2001) (as to whether a local board of education is a "government"); *Haney v. City of Lexington*, Ky., 386 S.W.2d 738, 742 (1965).

Rather than waiving immunity, the General Assembly specifically preserved the sovereign immunity of a county adopting

---

2. The waiver, however, does not have to be direct. The General Assembly may delegate the authority to waive immunity to the individual county governments. *See Taylor v. Knox County Board of Education,* 292 Ky. 767, 167 S.W.2d 700, 702 (1942). (The Legislature may empower its political subdivisions to purchase liability insurance for the protection of citizens injured through negligence attributable to the political subdivision.)

an urban county form of government in KRS 67A.060(1), which states:

> Urban-county governments may exercise the constitutional and statutory rights, powers, privileges, immunities and responsibilities of counties and cities of the highest class within the county:
>
> (a) In effect on the date the urban-county government becomes effective;
>
> (b) Which may subsequently be authorized for or imposed upon counties and cities of that class; and
>
> (c) Which may be authorized for or imposed upon urban counties.

Nonetheless Jurdana, Meculj, and Vasicek argue that KRS 44.071 waives LFUCG's sovereign immunity for this type of case.

KRS 44.071(1) provides:

The Board of Claims, created by KRS 44.070, is hereby vested with full power, authority, and jurisdiction to investigate, hear proof, and compensate persons for damages sustained to either person or property as approximate result of negligence on the part of any municipality, or any of its officers, agents, or employees while acting within the scope of their employment by the municipality, or any agency thereof, relating to the maintenance by the municipality of state-owned traffic control devices pursuant to a contract with the Commonwealth.

The trial court first ruled that the statute did not waive LFUCG's immunity for the purposes of pursuing claims against LFUCG in a civil trial court. Rather, the trial court ruled that, at best, the statute vested the Board of Claims with jurisdiction over the claims against LFUCG.

■ In addition to their suits filed in Fayette Circuit Court, Jurdana, Meculj, and Vasicek also brought suit against LFUCG and the Transportation Cabinet in the Board of Claims, which dismissed the suits against LFUCG on grounds that it lacked jurisdiction over the claims because LFUCG was a county (it allowed the suits against the Transportation Cabinet to remain viable). *See Commonwealth v. Harris,* Ky., 59 S.W.3d 896, 900 (2001) (holding that KRS 44.070 does not vest the Board of Claims with jurisdiction over claims against counties). Jurdana, Meculj, and Vasicek each appealed the Board of Claims' decision to the trial court. Their appeals were consolidated with each other and with their negligence cases against Rodgers, LFUCG, et al. After reviewing the briefs and arguments on the issue, the trial court affirmed the Board of Claims.

The Court of Appeals erroneously determined that whether the Board of Claims had jurisdiction over this case was not at issue. The issue became part of this case when the trial court consolidated Jurdana, Meculj, and Vasicek's appeals from the Board of Claims' decision with their negligence action against Rodgers, LFUCG, et al.

■ We agree with both the Board of Claims and the trial court that the Board of Claims does not have jurisdiction of this case under KRS 44.071. As reaffirmed above, LFUCG is a county government. KRS 44.071 only vests the Board of Claims with jurisdiction over "municipalities." A municipality is defined as a "municipal corporation" or "[t]he governing body of a municipal corporation." *Blacks Law Dictionary* (8th ed. online 2004). Under Kentucky law, counties are treated markedly different from other local government units, *e.g.* municipal corporations, due to a county's unique status under the Kentucky Constitution. *Calvert Investments, Inc. v. Louisville & Jefferson County Metropolitan Sewer Dist.,* Ky., 805 S.W.2d 133, 138 (1991). "Counties are unincorporated political subdivisions of the state, preexisting

its formation, whose existence is provided for constitutionally in Sections 63, 64, and 65 of the Kentucky Constitution." *Id.* In other words, an unincorporated county government is not a "municipality" under Kentucky law. Thus, despite the contract between the former City of Lexington and the Transportation Cabinet to maintain the traffic-control devices in question, KRS 44.071 does not vest the Board of Claims with jurisdiction over LFUCG.[3] Therefore, we affirm the trial court on this issue.

## III. Jural Rights

■ Jurdana, Meculj, and Vasicek argue that the creation of LFUCG violated their jural rights. The basis of this argument is that before LFUCG was formed, they would have been able to obtain a judgment against the City of Lexington. Because this right of recovery was eliminated by the retention of Fayette County's sovereign immunity by KRS 67A.060, they argue this violates Sections 14, 54, and 241 of the Constitution of Kentucky. The issue has already been decided by the Court of Appeals in *Fields v. Lexington–Fayette Urban County Government*, Ky.App., 91 S.W.3d 110, 112 (2001), which held that sovereign immunity "trumps" jural rights because sovereign immunity predates the adoption of Kentucky's first Constitution.

We agree with the reasoning of *Fields* and hold that KRS 67A.060 is not an unconstitutional violation of Jurdana, Meculj, and Vasicek's jural rights.

## IV. Apportionment

The court ruled, and the Court of Appeals held, that fault could be apportioned against LFUCG under KRS 411.182 notwithstanding its inherent sovereign immunity. LFUCG and all Appellees, except Cara Rodgers, argue on appeal that this result is inconsistent with our holding in *Jefferson County Com. Attorney's Office v. Kaplan*, Ky., 65 S.W.3d 916 (2001). Rodgers argues that *Kaplan* is either distinguishable or should be overruled. We agree with LFUCG that fault cannot be apportioned against it under *Kaplan*. Further, while we decline the invitation to overrule *Kaplan*, we take a moment to further explain our holding in that case.

KRS 411.182 states in pertinent part:

(1) In all tort actions, including products liability actions, involving fault of more than one party to the action, including third-party defendants and persons who have been released under subsection (4) of this section

. . . .

(4) A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable, shall discharge that person from all liability for contribution, but it shall not be considered to discharge any other persons liable upon the same claim unless it so provides.

In *Kaplan*, we held that the question of whether fault could be apportioned against a person or an entity under KRS 411.182 is to be answered by examining the statute. *Kaplan*, 65 S.W.3d at 922. We then held that fault could not be apportioned against

---

**3.** We note that a strong argument could be made that KRS 44.071 is unconstitutional when read in conjunction with KRS 44.100, regardless of whether LFUCG is a "municipality" within the meaning of the statute. Sections 176 and 177 of the Kentucky Constitution "preclude the General Assembly from enacting legislation authorizing payment of debts and liabilities of counties and munici-

palities from the state treasury." *Harris*, 59 S.W.3d at 902 (Cooper, J., concurring). Because KRS 44.100 provides that all awards assessed by the Board of Claims shall be paid by warrants drawn upon the State Treasurer, any award against a municipality sued under KRS 44.071 would be paid out of the general fund and not by the municipality itself, which would violate the Constitution.

three prosecutors and an expert witness, all of whom enjoyed absolute immunity, because they were neither third-party defendants under KRS 411.182(1), nor settling tort-feasors under subsection (4). *Id.* Unstated in this analysis is the necessary inference that a person or entity entitled to absolute immunity is not a "party to the action" under subsection (1). In *Kaplan,* we did not state why this was so. We do so now.

■■■■■ "Absolute immunity refers to the right to be free, not only from the consequences of the litigation's results, but from the burden of defending oneself altogether." *Fralin & Waldron, Inc. v. Henrico County, Va.,* 474 F.Supp. 1315, 1320 (D.C.Va.1979); 63C Am.Jur.2d, *Public Officers and Employees,* § 308 (1997). As stated by the U.S. Supreme Court, the "essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." *Mitchell v. Forsyth,* 472 U.S. 511, 525, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411, 424 (1985). It allows the possessor the right to avoid being "subjected to the cost and inconvenience and distractions of a trial." *Tenney v. Brandhove,* 341 U.S. 367, 377, 71 S.Ct. 783, 788, 95 L.Ed. 1019, 1027 (1951) (legislators).

■■■■■ Immunity from suit includes protection against the "cost of trial" and the "burdens of broad-reaching discovery" that "are peculiarly disruptive of effective government." *Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 409–10 (1982) (qualified immunity for presidential assistants). Immunity from suit exists not for the benefit of the possessor "but for the benefit of the public." *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288, 294 (1967) (judges).

For example, the public benefits from extending absolute immunity from suit against judges, because

> [i]t is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

*Pierson,* 386 U.S. at 554, 87 S.Ct. at 1218, 18 L.Ed.2d at 294–95.

As to prosecutors, the public policy is based in part on a "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler v. Pachtman,* 424 U.S. 409, 423, 96 S.Ct. 984, 991, 47 L.Ed.2d 128, 139 (1976). And as to legislators, immunity from suit is necessary

> to enable and encourage a representative of the public to discharge his public trust with firmness and success, it is indispensably necessary, that he should enjoy the fullest liberty of speech, and that he should be protected from the resentment of every one, however powerful, to whom the exercise of that liberty may occasion offense.

*Tenney,* 341 U.S. at 373, 71 S.Ct. at 786, 95 L.Ed. at 1025 (quoting James Wilson).

■■■■ Allowing apportionment against a possessor of immunity from suit defeats the above policy concerns. Even though free from financial liability, the possessor still would be subject to process; to the burdens of discovery, including the giving

of depositions; and to testifying at trial even if he or she chose not to actively defend his or her actions at trial. The possessor would not be free from the burdens of litigation, the specter of intimidation, or the threat of harassment. In other words, possessing absolute immunity from suit is incompatible with being "a party to the action" in any sense and construing the statute otherwise would result in a partial abrogation of the absolute immunity defense. Because nothing else in KRS 411.182 indicates any intention by the General Assembly to abrogate common-law absolute immunity, we held in *Kaplan* that, under the statute, fault could not be apportioned against a person or entity that possessed absolute immunity. *See Vaughn v. Webb*, Ky.App., 911 S.W.2d 273, 276 (1995). ("Court[s] will not imply abrogation absent language of this nature indicating a clear legislative intent to do same.")

We hold that fault cannot be apportioned against LFUCG because its inherent sovereign immunity renders it absolutely immune from suit, *see Yanero v. Davis*, Ky., 65 S.W.3d 510, 518 (2001), and, therefore, reverse the Court of Appeals on this issue.

## V. Individual Government Employees

The individual employees were sued in their individual capacities. The trial court dismissed the claims against them based on its conclusion that the allegations against the employees concerned discretionary acts and, thus, they were entitled to a qualified official immunity defense. *See Yanero*, 65 S.W.3d at 521–22. ("Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in

good faith; and (3) within the scope of the employee's authority." (Internal citations omitted)). The Court of Appeals reversed the trial court based on its conclusion "that the acts of the individual employees clearly fall within the definition of ministerial function as set out by the Supreme Court in *Yanero v. Davis*."

We agree with the Court of Appeals up to a point. Generally, the maintenance of traffic-control devices is a ministerial function. *See, e.g., Estate of Clark ex rel. Mitchell v. Daviess County*, Ky. App., 105 S.W.3d 841, 846 (2003). (Alleged failure to replace a highway warning sign is ministerial in nature.) *Shearer v. Hall*, Ky., 399 S.W.2d 701, 704 (1966). ("[A] public officer is liable for personal injuries resulting from his negligence, where the duty imposed on him of keeping the streets or highways in repair is ministerial or mandatory in character, and not judicial or discretionary.") Thus, we believe that the trial court erred as a matter of law in concluding that the allegations against the individual employees consisted entirely of discretionary acts. But the record is not sufficiently developed to determine which, if any, of the individual employees had the duty to maintain the traffic-control devices at issue in this case.

Therefore, we affirm the Court of Appeals' holding on this issue in as much as it reverses the trial court's dismissal of the individual employees because they were entitled to qualified immunity.

## VI. Admissibility of Rodgers' Guilty Plea

On June 4, 1998, Cara Rodgers entered a conditional guilty plea to one charge of violating KRS 189A.010, which makes it illegal for persons under the age of twenty-one (21) to operate a motor vehicle with a blood "alcohol concentration of 0.02 or more." The trial court found that

this guilty plea was an *Alford*[4] plea that was therefore not admissible under KRE 410(2). The Court of Appeals did not expressly address this issue but, rather, affirmed the trial court's ruling by implication.

Upon review of the record and the trial court's thorough findings, we conclude that the trial court's ruling was supported by substantial evidence and was not clearly erroneous. CR 52.01. Therefore, we affirm the Court of Appeals on this issue. *Moore v. Asente*, Ky., 110 S.W.3d 336, 354 (2003). ("[A]ppellate courts should not disturb trial court findings that are supported by substantial evidence.")

## VII. Conclusion

For the reasons set forth above, we affirm the Court of Appeals in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

COOPER and GRAVES, JJ., concur.

LAMBERT, C.J., concurs in part and dissents in part by separate opinion, with STUMBO and WINTERSHEIMER, JJ., joining.

KELLER, J., concurs in part and dissents in part by separate opinion.

Opinion by Chief Justice LAMBERT, concurring in part and dissenting in part.

I concur with the Opinion of the Court except as to its conclusion that the Board of Claims does not have jurisdiction over Lexington–Fayette Urban County Government (LFUCG). My views were fully expressed in the dissent in *Commonwealth, Board of Claims v. Harris*, Ky., 59 S.W.3d 896 (2001), and I reiterate those views here.

STUMBO and WINTERSHEIMER, JJ., join.

Opinion by Justice KELLER, concurring in part and dissenting in part

I agree with the majority opinion that LFUCG's liability was extinguished by its assertion of sovereign immunity, but for reasons expressed in my dissent in *Jefferson County Commonwealth Attorney's Office v. Kaplan*,[1] I do not believe that LFUCG's immunity precluded fault from being apportioned against it if justified by the evidence. "The majority's contrary holding ... 'violates the main purpose of comparative fault by improperly subjecting the [other] defendants to liability in excess of their proportion of fault.' "[2] Accordingly, I dissent as to Part IV (Apportionment) of the majority opinion.

---

4. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

1. Ky., 65 S.W.3d 916 (2002) (Keller, J., dissenting).

2. *Id.* at 928 (Keller, J., dissenting) (quoting *Northland Ins. Co. v. Truckstops Corp. of America*, 914 F.Supp. 216 (N.D.Ill.1995)).