RENDERED: DECEMBER 16, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0192-DG

INDEPENDENCE BANK, C/O PAUL        APPELLANT
BRADFORD AND MICHAEL BURNS,
TRUST OFFICERS, AS THE LIMITED
GUARDIAN AND LIMITED
CONSERVATOR OF ANTHONY W.
NOEL


                     ON REVIEW FROM COURT OF APPEALS
V.                      NO. 2018-CA-0187
             FAYETTE CIRCUIT COURT NO. 17-CI-02505


TREVOR WELCH IN HIS OFFICIAL        APPELLEES
CAPACITY AS AN EMPLOYEE,
SERVANT, AND/OR AGENT OF
LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT AND/OR
LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT DIVISION OF
POLICE; LEXINGTON-FAYETTE
URBAN COUNTY GOVERNMENT
DIVISION OF FLEET SERVICE;
LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT DIVISION OF
POLICE; AND LEXINGTON-FAYETTE
URBAN COUNTY GOVERNMENT


**OPINION OF THE COURT BY JUSTICE HUGHES**

**AFFIRMING**

Anthony W. Noel was seriously injured in a collision between his bicycle

and a police cruiser driven by Trevor Welch, a Lexington police officer and

employee of the Lexington-Fayette Urban County Government (LFUCG). He

filed suit against Welch in his individual and official capacities and against LFUCG and two of its divisions. The LFUCG defendants moved for dismissal, asserting, among other things, sovereign immunity as protection from civil judgments and the costs and burdens of defending such actions. Noel countered that LFUCG's purchase of a retained-limit insurance policy, purchased for coverage beyond the limits of its self-insurance policy, waived sovereign immunity up to policy limits. The trial court disagreed, concluding that the LFUCG defendants are entitled to sovereign immunity and dismissing all claims against them. The Court of Appeals affirmed. On discretionary review, we consider these insurance policies in light of Kentucky Revised Statute (KRS) 67.180, which authorizes counties to purchase liability insurance, to determine whether a waiver of sovereign immunity exists and, if so, to what extent. Finding the statute and legislative intent clear, we affirm the Court of Appeals, although with a different legal analysis.

## FACTS AND PROCEDURAL HISTORY

On November 23, 2016 Noel was riding a bicycle against traffic in Lexington, Kentucky. Officer Welch, employed as a police officer by LFUCG, turned his LFUCG-owned police car in front of Noel. As a result, Noel collided with the driver's side door of Officer Welch's cruiser, fell, and sustained serious physical injuries. On July 11, 2017 Noel filed a negligence action against Welch in both his individual and official capacities, LFUCG, LFUCG Division of Police and LFUCG Division of Fleet Service (collectively "LFUCG defendants").

2

Noel demanded no-fault personal injury protection benefits and compensatory and punitive damages.

In discovery LFUCG produced insurance policy documents that outlined its self-insurance policy and its retained-limit policy. The self-insurance policy provides coverage to LFUCG and its employees, officers and agents for comprehensive general and automobile liability. The policy specifically covers personal injury claims "arising out of the ownership, maintenance or use of any [LFUCG] automobile." LFUCG maintains a self-insurance fund for the costs of defense and for any legal obligation to pay on various claims. LFUCG also has a retained-limit policy issued by American Alternative Insurance Corporation (AAIC), which provides excess insurance. This coverage only comes into effect after the retained limit is exhausted in full by the self-insurance policy.

The LFUCG defendants moved for dismissal, arguing Noel had failed to state a claim and asserting sovereign immunity as protection from civil judgments and the costs and burdens of defending such actions. Specifically, the LFUCG defendants maintained that LFUCG's self-insurance and Noel's claim were outside the scope of KRS 67.180(2), which at most allows suit to be filed against a county to "measure the liability of the insurance carrier to the injured party." The LFUCG defendants also filed an answer to the complaint, seeking dismissal with prejudice. Noel opposed dismissal, claiming that LFUCG's purchase of its retained-limit policy as permitted by KRS 67.180 waived sovereign immunity up to the policy limits.

As noted, the trial court granted the motion to dismiss. The trial court determined that the LFUCG defendants are entitled to sovereign immunity and that the existence of the retained-limit policy in addition to the self-insurance policy does not constitute an express waiver of the sovereign immunity defense under KRS 67.180. Noel filed a Kentucky Rule of Civil Procedure (CR) 59.05 motion to vacate the dismissal, which the trial court denied.

The Court of Appeals affirmed the trial court. Citing the trial court's order, the Court of Appeals concluded that the existence of a retained-limit policy to supplement LFUCG's self-insurance policy does not constitute a waiver of the LFUCG defendants' sovereign immunity defense. The Court of Appeals emphasized that Noel can seek redress for his complaints in a suit against Officer Welch in his individual capacity, pursuing the benefit of measuring liability against the insurance Officer Welch depends on, which is the LFUCG self-insurance policy (and if that is exhausted, the AAIC policy), without violating the longstanding concepts of sovereign immunity.[1] Having granted discretionary review, heard oral arguments and carefully considered the record, we affirm.

## ANALYSIS

The primary issue before us is whether LFUCG's self-insurance policy coupled with a retained-limit policy results in a waiver of the immunity

---

[1] We note that at the time briefs in this case were filed, Noel's claims against Officer Welch in his individual capacity were proceeding in the Fayette Circuit Court. Noel and Welch have propounded and responded to discovery, engaged in extensive depositions, presented substantive motions and scheduled pretrial conferences.

inherent to LFUCG as a governmental entity, an issue which requires interpretation of KRS 67.180. Statutory interpretation is a question of law, which we review de novo. *St. Joseph Hosp. v. Frye*, 415 S.W.3d 631, 632 (Ky. 2013).

## I. LFUCG's Self-Insurance Policy Does Not Constitute a Waiver of Its Sovereign Immunity.

Sovereign immunity "is an inherent attribute of a sovereign state that precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity." *Yanero v. Davis*, 65 S.W.3d 510, 517-18 (Ky. 2001). As a basic subdivision of the Commonwealth, a Kentucky county is cloaked with sovereign immunity. *Lexington-Fayette Urb. Cnty. Gov't v. Smolcic*, 142 S.W.3d 128, 132 (Ky. 2004) (citing *Monroe Cnty. v. Rouse*, 274 S.W.2d 477, 478 (Ky. 1955)). In *Smolcic*, the Court held that LFUCG is generally entitled to sovereign immunity. 142 S.W.3d at 132. Therefore, LFUCG is entitled to sovereign immunity from Noel's tort claims unless that immunity is waived.

The waiver of sovereign immunity is exclusively a legislative matter. *Withers v. Univ. of Ky.*, 939 S.W.2d 340, 344 (Ky. 1997). This Court has stated that "[w]e will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Id.* at 346 (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)). With those guiding principles, we turn to the pertinent statute.

5

Noel argues that LFUCG's purchase of the retained-limit policy through AAIC constitutes a waiver of its sovereign immunity, an argument he premises on KRS 67.180. That statute, which gives Kentucky counties the discretion to purchase insurance policies covering vehicles operated by the county,[2] states:

> (1) The fiscal court of each county, except a county containing a city of the first class **may, in its discretion, for the protection of the public and its employees, appropriate county funds to purchase policies of insurance of all kinds deemed advisable**, covering vehicles operated by the county, and compensation insurance covering employees of the county receiving injuries arising out of and in the course of employment.
>
> (2) **Suits instituted on such policies may be maintained against the county only for the purpose of obtaining a judgment which when final shall measure the liability of the insurance carrier** to the injured party for whose benefit the insurance policy was issued, but not to be enforced or collectible against the county or fiscal court or the members thereof.

(Emphasis added). Purchasing such insurance is purely discretionary.

While KRS 67.180 does not use the word "waiver," subsection (2) provides an express, but limited, waiver of sovereign immunity because it permits suits against the county but only to obtain a judgment to measure the liability of the insurance carrier to the injured party. It explicitly states that such a judgment cannot be enforced or collected against the county, fiscal court or members thereof. Our caselaw has consistently treated subsection (2) as a limited waiver of sovereign immunity. *See Rouse*, 274 S.W.2d at 479 (holding that subsection (2) represented a modification of the common law rule

---

[2] This statute gives 119 Kentucky counties (all except Jefferson County which contains a city of the first-class) discretion to purchase insurance policies.

of immunity by authorizing a suit against a county for damages arising out of an automobile accident for the sole purpose of measuring the liability of the county's automobile liability insurer; *Ginter v. Montgomery Cnty.*, 327 S.W.2d 98, 100 (Ky. 1959) (holding that "[S]ubsection (2) of KRS 67.180 clearly recognizes the immunity doctrine in providing that a suit on such a policy is maintainable against the county only for the purpose of obtaining a judgment which shall measure the liability of the insurance carrier, and shall not be enforced or collectible against the county or the fiscal court."). The legislative intent is clear that the waiver should apply narrowly in limited circumstances and should not result in liability on the part of the county but rather only the insurance carrier from which coverage was purchased.

KRS 65.2005(1) requires local government[3] to "provide for the defense of any employee by an attorney chosen by the local government in any action in tort arising out of an act or omission occurring within the scope of his employment . . . ." Pursuant to this statutory obligation, LFUCG maintains a self-insurance policy to provide coverage to itself for property and workers' compensation claims, and to itself and its employees, officers and agents for comprehensive general and automobile liability. LFUCG maintains a self-insurance fund to cover the costs of defense and any legal obligation to pay on various claims. The self-insurance policy provides comprehensive indemnity

---

[3] Local government is defined to include among others, "a city, county . . . or urban-county government." KRS 65.025(1)(b).

7

coverage for personal injury claims "arising out of the ownership, maintenance or use of any [LFUCG] automobile."

Additionally, through its comprehensive automobile liability coverage LFUCG will defend any bodily injury claims that arise due to the use of an owned motor vehicle by an employee like Welch. LFUCG will pay the amount for which its covered employees are found to be liable (up to policy limits) and all costs for defense with funds from the self-insured fund. The self-insurance fund provides "for cost of defense only [on behalf of LFUCG] unless defense of Sovereign Immunity is not applicable," in which case costs of defense and indemnity will be provided.

In addition to its self-insurance policy, LFUCG also has a retained-limit policy issued by AAIC. This policy is for excess insurance and its coverage comes into effect only after the retained limit, $2 million, is exhausted in full by the self-insurance policy. The AAIC policy simply indemnifies for damages that LFUCG becomes legally obligated to pay beyond the retained limit. The AAIC policy specifies that an obligation to pay "must be evidenced by either a judgment against you after the actual trial," an arbitration award, or "a written settlement executed with the claimant." Thus the policy does not apply in the first instance but only post-judgment or post-settlement. Furthermore, the AAIC policy is explicit that AAIC has no duty to defend.

When interpreting statutes "we must first look to the plain language of a statute and, if the language is clear, our inquiry ends." *Univ. of Louisville v. Rothstein*, 532 S.W.3d 644, 648 (Ky. 2017). "[I]f a statute is clear and

8

unambiguous and expresses the legislature's intent, the statute must be applied as written." *Hall v. Hosp. Res., Inc.*, 276 S.W.3d 775, 784 (Ky. 2008). Noel argues that the legislature has statutorily waived sovereign immunity in motor vehicle collision cases by enacting KRS 67.180, but we must disagree. The legislative intent is clear from the language of KRS 67.180 and that intent is that a waiver of sovereign immunity is limited to the narrow circumstances where the county has purchased an insurance policy, in which case suit can be instituted on that policy. Any recovery cannot be enforced or collected against the county.

"Purchase policies of insurance" is an operative phrase in KRS 67.180(1). "Insurance" is defined by *Black's Law Dictionary* (11th ed. 2019) as "[a] contract by which one party (the *insurer*) undertakes to indemnify another party (the *insured*) against risk of loss, damage, or liability arising from the occurrence of some specified contingency." "Self-insurance" is a form of insurance defined by *Black's Law Dictionary* as "[a] plan under which a business maintains its own special fund to cover any loss. Unlike other forms of insurance, there is no contract with an insurance company." *Id.*

Recently, in *Merritt v. Catholic Health Initiatives, Inc.*, 612 S.W.3d 822 (Ky. 2020), we discussed the differences between self-insurance and insurance in the course of holding that the Unfair Claims Settlement Practices Act (UCSPA) does not apply to captive insurers, which engage in a form of self-insurance. KRS 304.49-150(1). First Initiatives, a wholly owned subsidiary of Catholic Health Initiatives, provided insurance only to Catholic Health

9

Initiatives, making it a captive insurer exempt from the provisions of the UCSPA. *Id.* at 828. In reaching that conclusion, we distinguished self-insurance from insurance by noting that "the shifting of risk from one party to another [is] a necessary component of an insurance contract," describing insurance as "an arrangement for transferring and distributing risk." *Id.* at 831 (quotations and citations omitted).

> Self-insurance does not have the necessary characteristics of risk shifting and risk distribution. A self-insurer and an insurer are not the same because a self-insurer does not engage in risk shifting. The parent of a captive insurer, like Catholic Health in this case, retains an economic stake in whether a covered loss occurs. Therefore, an agreement between a parent and a captive insurer does not shift the risk of loss.

*Id.* (internal quotations and citations omitted). *See also Commonwealth v. Reinhold*, 325 S.W.3d 272, 276 (Ky. 2010) ("[T]he shifting of risk from one party to another [is] a necessary component of an insurance contract.").

Although this case does not involve parent corporations or wholly owned subsidiaries, the distinctions between insurance and self-insurance are nevertheless applicable. KRS 67.180(1) authorizes the fiscal court to "**purchase** policies of insurance of all kinds" and LFUCG's self-insurance policy was not purchased. (Emphasis added). Rather, the self-insurance policy and fund were created by LFUCG. Additionally, risk is not shifted from one party to another because the risk under the self-insurance always remains with LFUCG. A self-insurance policy cannot be squared with KRS 67.180(2) because (1) a suit instituted on a county insurance policy must be "only for the purpose of obtaining a judgment which when final shall measure the liability of

10

the insurance carrier" and (2) any judgment under the subsection shall "not be enforced or collectible against the county . . . ." Self-insurance does not involve an "insurance carrier." Thus, the necessary criteria for the limited waiver cannot be met in a suit "instituted on" a county's individual self-insurance policy, a policy that was never purchased and that leaves all risk on the county, or in this case LFUCG.

Faced with this hurdle, Noel focuses on the AAIC retained-limit policy and urges this Court to hold that KRS 67.180 must be interpreted to waive sovereign immunity up to the limits of the AAIC policy. But that interpretation of KRS 67.180 is not supported by the plain language of the statute. The statute does not reference a maximum amount or include "up to." If Noel's interpretation were adopted, it would suggest that a county's sovereign immunity would still be there for amounts beyond the purchased excess policy limit. Subsection (2) makes it clear that any suit maintained against a county is in name only and for the exclusive purpose of determining an insurance carrier's liability; any judgment cannot be enforced or collected against the county. The freedom from suit that is the defining characteristic of sovereign immunity cannot somehow exist in an "on again, off again" fashion.

If Noel's analysis applied, LFUCG would be immune from liability up to $2 million, not immune from $2 million up to $5 million, and immune again for anything in excess of $5 million. But when a suit is initiated, there is only a claim and it is not known until some future point whether liability will be found and, if so, whether the amount will include anything in the "not immune" range

11

Noel advocates. This intermittency of exposure is entirely unworkable and cannot be what the legislature intended. "When a court construes statutory provisions, it must presume 'that the legislature did not intend an absurd result.'" *Workforce Dev. Cabinet v. Gaines*, 276 S.W.3d 789, 793 (Ky. 2008) (quoting *Commonwealth, Cent. State Hosp. v. Gray*, 880 S.W.2d. 557, 559 (Ky. 1994)). The establishment of a self-insurance policy paired with a retained-limit policy does not constitute a waiver of sovereign immunity up to the retained-limit policy limits under KRS 67.180 because that result is absurd.

More pertinently, the retained-limit policy issued by AAIC is essentially excess insurance and depends on LFUCG having a primary form of insurance— the self-insurance policy. When a suit is instituted against LFUCG or its employees the only policy involved is LFUCG's individual self-insurance policy, and that is not "insurance" or a purchased policy that would trigger subsection (2). Such a suit cannot possibly be characterized as instituted on the retained-limit policy because, as this Court has recognized, retained-limits insurance is not implicated until the limits of the primary policy are exhausted. *Ohio Cas. Ins. Co. v. State Farm Mut. Ins. Co.*, 511 S.W.2d 671, 674 (Ky. 1974).[4] The self-insurance policy draws upon the self-insurance fund to defend claims,

---

[4] *See also Motorist Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 453 (Ky. 1997) ("As the 'excess' insurer, it did not owe any coverage until [the] primary coverage was exhausted."); Steven Plitt, et al., 3 *Couch on Insurance*, §§ 200.38, 200.41, 200.43 (June 2020 Update) (Noting that an excess carrier generally has no obligation to defend unless the primary limit has been reached; its defense obligations are contingent upon the excess policy's terms and conditions even if the primary insurer denies coverage or refuses to defend.).

12

including those against LFUCG employees, and to pay claims up to an aggregate limit. The AAIC policy is not even triggered until the retained limit of $2 million is exhausted. Additionally, as noted above, the AAIC policy indemnifies LFUCG for damages only when LFUCG becomes "legally obligated" to pay by judgment, arbitration award or an executed settlement agreement.

Finally, we presume that the legislature is aware of the state of the law when it enacts a statute, including the judicial construction of prior enactments. *St. Clair v. Commonwealth*, 140 S.W.3d 510, 570 (Ky. 2004) (citing *Button v. Hikes*, 176 S.W.2d 112, 117 (Ky. 1943)). Here this includes awareness of this Court's longstanding interpretation that KRS 67.180 provides only a very limited waiver of sovereign immunity. If the legislature intended a broader waiver as advocated by Noel, it could have so stated.

## II. The Terms of the AAIC Retained-Limit Policy Are Immaterial to Any Limited Waiver of Sovereign Immunity.

Next, Noel challenges the Court of Appeals' opinion as carving out an exception to KRS 67.180 based on the terms of the AAIC retained-limit policy. Specifically, the Court of Appeals determined that the AAIC policy is not the type of coverage contemplated by KRS 67.180:

> It is instead a liability policy in name only which merely indemnifies LFUCG for "damages [LFUCG] becomes legally obligated to pay . . . ." Although titled "AUTOMOBILE LIABILITY COVERAGE PART," the "DEFENSE AND INDEMNIFICATION" portion of the policy absolves AAIC of any and all responsibility for defending claims against LFUCG. Covering legal costs and payouts for which the insured is ultimately found to be legally liable is part and parcel of a traditional "automobile liability policy." LFUCG's policy does not do so.

*Noel v. Welch*, 2018-CA-000187-MR, 2019 WL 1213253, at *4 (Ky. App. Mar. 15, 2019). The Court of Appeals is correct that the AAIC policy is limited to indemnification, specifically excluding any duty to defend LFUCG. Noel argues that the appellate court undercut the waiver of sovereign immunity based on the absence of a specific "duty to defend" provision in the policy.

Given that KRS 67.180 contains only a limited waiver of sovereign immunity for the sole purpose of measuring the liability of the insurance carrier from whom a county purchased coverage, we need not address this argument or the specific terms of the AAIC policy. Noel's claim against LFUCG does not fit within the plain language of KRS 67.180 regardless of the "no duty to defend" term of the AAIC excess coverage policy.

### III. The Reenactment Doctrine Does Not Support a Complete Waiver of Sovereign Immunity.

Finally, Noel argues that the reenactment doctrine supports the waiver of sovereign immunity. Generally, this rule of statutory construction states:

> When a statute has been construed by a court of last resort and the statute is substantially reenacted, the Legislature may be regarded as adopting such construction. The failure of the legislature to change a known judicial interpretation of a statute [is] extremely persuasive evidence of the true legislative intent. There is a strong implication that the legislature agrees with a prior court interpretation when it does not amend the statute interpreted.

*Rothstein*, 532 S.W.3d at 651 (internal citations omitted). KRS 67.180 was enacted in 1944 and the substance of that version of the statute is virtually

14

identical to the current version.[5]  Noel again asserts that the proper interpretation of KRS 67.180 is that immunity is waived in motor vehicle collision cases up to the extent of insurance purchased by counties (without regard to whether the insurance is primary or excess) and the absence of substantive changes to the statute since the 1940s becomes a "reenactment" by which the General Assembly has endorsed his asserted interpretation.

The Court of Appeals, then Kentucky's highest Court, addressed the application of KRS 67.180 in *Rouse*, 274 S.W.2d 477.  The *Rouse* Court held that the enactment of KRS 67.180(2) represented a modification of the common law rule of immunity by authorizing a suit against a county for damages arising out of an automobile accident for the sole purpose of measuring the liability of the county's automobile liability insurer.  *Id.* at 479.  The Court allowed a nominal suit against Monroe County solely to measure the liability of the county's insurer—thereby keeping the insurer from escaping its contractual obligation to the county to provide compensatory coverage in such a situation. *Id. Rouse* established that subsection (2) constitutes an express, but limited, waiver of a county's sovereign immunity.  The Court next addressed the application of KRS 67.180 in *Ginter*, 327 S.W.2d 98, 100, and held that subsection (2) "clearly recognizes the immunity doctrine" in providing that a

---

[5] In 2014, the General Assembly amended the language in subsection (1) to substitute "except a county containing a city of the first class" as the equivalent of "containing a city of the second, fourth, fifth or sixth class."  No substantive changes were made.

suit on a county insurance policy is maintainable only to measure the liability of the insurance carrier.

These cases decided in the decade following the 1944 enactment of KRS 67.180 and the statute's 2015 reenactment with no substantive changes validate this Court's continued interpretation that the statute contains a very limited waiver of sovereign immunity. The reenactment doctrine supports LFUCG's position that its sovereign immunity is not waived under the facts of this case and the plain language of KRS 67.180.

## CONCLUSION

LFUCG's self-insurance policy coupled with the AAIC excess coverage policy does not constitute an express waiver of sovereign immunity under KRS 67.180. Accordingly, the trial court correctly held that the LFUCG defendants are immune from suit. For the foregoing reasons, we affirm.

Minton, C.J.; Conley, Keller, Lambert, and VanMeter, JJ., sitting. All concur. Nickell, J., not sitting.

COUNSEL FOR APPELLANT:

David Todd Varellas
Sandra Motte Varellas
Varellas & Varellas


COUNSEL FOR APPELLEES:

Jason Scott Morgan
Alexander William Wilcox
Ward, Hocker & Thornton, PLLC


COUNSEL FOR AMICUS CURIAE,
KENTUCKY JUSTICE ASSOCIATION:

Kevin Crosby Burke
Burke Neal PLLC