RENDERED: JANUARY 13, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0126-MR

CLEVELAND ASKEW, JR.                                    APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.       HONORABLE CHARLES L. CUNNINGHAM, JR., JUDGE
ACTION NO. 16-CI-000661

TROOPER EDWARD WHITWORTH                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND DIXON, JUDGES.

DIXON, JUDGE: Cleveland "Stewart" Askew, Jr., appeals from the order granting Trooper Edward "Eddie" Whitworth summary judgment on immunity grounds, entered by the Jefferson Circuit Court on January 3, 2022. Following a careful review of the record, briefs, and law, we affirm.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Stewart was very close to his pet dog. While Stewart worked, his dog stayed at his parents' house in Shelby County, where his sister and her son also lived. Unfortunately, Stewart's dog went through an open gate, into traffic, and was killed. Upon learning of his dog's death, Stewart sought "retribution" by strangling his parents' cat, shooting at his sister's dog three times inside the house in the presence of family, and threatening his family. Stewart's mom contacted the police who filed a complaint and obtained an arrest warrant. Stewart's family stayed at a hotel, fearing what Stewart might do.

After an unsuccessful attempt to execute the arrest warrant by local law enforcement, Kentucky State Police (KSP) Troopers Brian Miller and Eddie Whitworth were dispatched to arrest Stewart. They arrived at Stewart's apartment complex in Jefferson County at approximately 11:30 p.m. Trooper Miller stood sentry by an exterior window of the building while Trooper Whitworth knocked on the door and rang the doorbell. Trooper Whitworth did not otherwise announce himself and backed away from the door and slightly down the dimly lit hallway so as not to be seen through the peephole.

Stewart, who had been asleep on his couch, opened the door and looked down the hallway[1] with a gun at his side. Trooper Whitworth – armed with

---

[1] It is disputed exactly how far Stewart emerged from his doorway.

a flashlight and gun and seeing Stewart's gun – announced, "State Police" and demanded Stewart drop his weapon.[2]  Trooper Whitworth recognized Stewart and observed he had a "crazy" look in his eyes.  Stewart did not comply with the directive to drop his weapon and appeared to "lunge"[3] toward Trooper Whitworth, who again announced, "State Police" and demanded Stewart drop his gun.[4]  Due to Stewart's noncompliance and Trooper Whitworth's fear for his life, Trooper Whitworth fired three shots, two of which struck Stewart while one became lodged in the apartment.  After being shot, Stewart came to rest inside his apartment.  An ambulance was called, and Stewart was treated for injuries to his ear, neck, shoulder, and back[5] at a local hospital.

One year later, Stewart filed this lawsuit against Trooper Whitworth, Trooper Miller, the KSP, the KSP Commissioner, and a KSP captain.  Significant discovery was conducted, including depositions and expert witness reports, and transcript testimony from a four-day criminal jury trial in Jefferson County and

---

[2]  Stewart claims Trooper Whitworth did not speak prior to shooting.  Stewart interviewed other residents who were in their apartments that night and asserts they did not hear Trooper Whitworth's voice prior to shots being fired.  However, a witness who was outside the apartment complex that night, as well as Trooper Miller, testified they heard these commands.

[3]  Stewart denies "lunging" toward Trooper Whitworth.

[4]  Again, Stewart alleges Trooper Whitworth did not say anything prior to shooting him.

[5]  One bullet appears to have grazed Stewart's ear, one bullet appears to have entered Stewart's shoulder and exited through his back, and one bullet entered Stewart's neck and came to rest near his spine.

another criminal trial in Shelby County was submitted into the record. Defendants moved the trial court for summary judgment on various grounds, including sovereign and qualified immunity. The trial court ultimately granted summary judgment on behalf of Defendants. This appeal followed.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[6] 56.03. An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exists and the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). A grant of summary judgment is reviewed *de novo* because factual findings are not at issue. *Pinkston v. Audubon Area Cmty. Servs., Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006) (citing *Blevins v. Moran*, 12 S.W.3d 698 (Ky. App. 2000)).

## ANALYSIS

On appeal, Stewart contends the trial court erred in finding Trooper Whitworth entitled to qualified immunity. Sovereign immunity is broad,

---

[6] Kentucky Rules of Civil Procedure.

-4-

protecting the state not only from the imposition of money damages but also from the burden of defending a lawsuit. *Meinhart v. Louisville Metro Gov't*, 627 S.W.3d 824, 830 (Ky. 2021); *Lexington-Fayette Urban Cnty. Gov't v. Smolcic*, 142 S.W.3d 128, 135 (Ky. 2004) ("Immunity from suit includes protection against the 'cost[s] of trial' and the 'burdens of broad-reaching discovery' that 'are peculiarly disruptive of effective government.'") (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). The doctrine of sovereign immunity also covers departments, boards, and agencies that are integral parts of state government, such as police departments and their employees. *See Bryant v. Louisville Metro Hous. Auth.*, 568 S.W.3d 839, 846 (Ky. 2019). The immunity of governmental and quasi-governmental agencies is referred to as "governmental" as opposed to "sovereign" immunity; although this delineation in terminology is a distinction without a difference. *Id.* The immunity that extends to governmental employees in their individual capacities is commonly referred to as "qualified" immunity. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).

Whether qualified immunity extends to an individual turns on whether their actions – or inactions – were discretionary or ministerial. *Id.* "Generally, a governmental employee can be held personally liable for negligently failing to perform or negligently performing a ministerial act." *Marson v. Thomason*, 438 S.W.3d 292, 296 (Ky. 2014). By contrast, such employees are immune when

-5-

performing discretionary acts, so long as they act in good faith. Thus, qualified immunity "rests not on the status or title of the officer or employee, but on the function performed." *Yanero*, 65 S.W.3d at 521.

In the case herein, Trooper Whitworth's actions in executing the arrest warrant were clearly discretionary in nature and within the scope of his authority. Thus, the key question in this case is whether Trooper Whitworth acted in good faith.

Concerning good and bad faith, the Supreme Court of Kentucky has held:

> The good faith qualification has both an objective and a subjective component. Objectively, a court must ask whether the behavior demonstrates a presumptive knowledge of and respect for basic, unquestioned constitutional rights. Subjectively, the court's inquiry is whether the official has behaved with permissible intentions. However, . . . most case law addresses these elements by stating when the qualified immunity is not available, or when the public official is acting in bad faith. Thus, bad faith can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded a person in the plaintiff's position, i.e., objective unreasonableness. Acting in the face of such knowledge makes the action objectively unreasonable. Or, bad faith can be predicated on whether the public employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive, which requires a subjective analysis.

*Bryant v. Pulaski Cnty. Det. Ctr.*, 330 S.W.3d 461, 466 (Ky. 2011) (internal quotation marks and citations omitted).  The burden of proof is on Stewart to show that Trooper Whitworth's actions were not performed in good faith.  *Id.* at 466-67.

A trial court's grant of summary judgment concerning immunity can sometimes differ from other grants of summary judgment.  Even so,

> the qualified-immunity defense does not change the normal summary-judgment rules.  So when deciding whether force was excessive or whether our precedent clearly established that result, we must view genuine factual disagreements in the light most favorable to the plaintiff.  **If a reasonable jury could credit the plaintiff's version of events** and if that version clearly shows the excessive nature of the defendants' force, we cannot grant the officers summary judgment.

*Gambrel v. Knox Cnty., Kentucky*, 25 F.4th 391, 400 (6th Cir. 2022) (emphasis added) (citations omitted).  Ordinarily, the existence of material disputed facts acts as a prohibition to a trial court's ability to grant summary judgment; however, that is not always the case on the question of immunity.  *Meinhart*, 627 S.W.3d at 829.  In such cases, discovery need not be completed nor must all disputed facts be resolved by a jury before a trial court can rule on the issue of qualified official immunity.  *Id.*  Otherwise, the fundamental purposes of immunity would be eviscerated.  *Id.*  The Supreme Court of Kentucky has recognized that "trial courts must make certain factual findings when deciding a party's entitlement to qualified official immunity[.]"  *Id.*  Such factual findings include whether actions are

-7-

performed in good faith. In the case herein, the trial court found that Trooper Whitworth acted in good faith.

Stewart argues the trial court erred in finding Trooper Whitworth acted in good faith because, taking Stewart's allegations as true, Trooper Whitworth's actions were not objectively reasonable when he shot Stewart immediately after he opened the door without saying anything or giving any warning whatsoever. It is well-established:

> The Fourth Amendment protects citizens from excessive force during an arrest, investigatory stop, or other seizure. Excessive force claims hinge on whether the officers' actions were **objectively reasonable** in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. The inquiry draws from the totality of the circumstances and **must be judged from the perspective of a reasonable officer on the scene**, rather than with the 20/20 vision of hindsight. Three non-dispositive and non-exclusive factors guide the inquiry: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight.

*Crowe v. Steward*, 5:20-CV-203-REW, 2022 WL 4291331, at *4 (E.D. Ky. Sept. 16, 2022) (emphasis added) (internal quotation marks, brackets, and citations omitted).

In the case herein, from the perspective of a reasonable officer on the scene, Trooper Whitworth was attempting to arrest Stewart who, earlier in the day,

had threatened his own family, strangled a cat, and fired his gun at his sister's dog in the presence of family. When Stewart answered the door, he had a gun in his hand and a "crazy" look in his eyes; he did not drop his gun after being commanded to do so; and he moved in what was perceived to be an aggressive manner toward Trooper Whitworth, making him fear for his life. Trooper Whitworth's commands were loud enough to be heard by Trooper Miller down the hallway and another resident who happened to be outside at the time. Conversely, "[n]o reasonable juror could adopt the interpretations Plaintiff offers" that Trooper Whitworth said absolutely nothing prior to shooting Stewart. *Crowe*, 2022 WL 4291331, at *6.[7] Thus, Trooper Whitworth's actions were objectively reasonable considering the facts and circumstances confronting him.

---

[7] This case is distinguishable from *King v. Taylor*, 694 F.3d 650 (6th Cir. 2012), because in that case "a jury could find, based upon the forensic evidence, expert testimony, and common sense, that King did not threaten the officers by pointing a gun at them just before he was shot." *Id.* at 662. Here, whether Stewart pointed his gun at Trooper Whitworth prior to being shot is not a genuine issue of material fact that would preclude summary judgment; neither does whether Trooper Whitworth is entitled to qualified immunity hinge on that fact.

Similarly, this case is also distinguishable from *Brandenburg v. Cureton*, 882 F.2d 211 (6th Cir. 1989). In that case:

> Though detective Sharp claims that Mr. Brandenburg had pointed his weapon "directly at us," presumably proving that he or any officer would have a subjective belief in a threat of serious physical harm, there are facts which might indicate otherwise. Appellants' own expert testified that the position of the body after death indicated that the right hand was not grasping the trigger and that the position of the left arm could not prove that Mr. Brandenburg was aiming his weapon at the officers. Furthermore, the jury might reasonably consider why the two other officers did

Because Stewart failed to put forward any evidence that Trooper Whitworth acted in bad faith, either subjectively or objectively, the trial court did not err in finding Trooper Whitworth entitled to qualified immunity as a matter of law. We further echo the sentiments of the Supreme Court of Kentucky:

> it is not in the public's interest to allow a jury of laymen with the benefit of 20/20 hindsight to second-guess the exercise of a police officer's discretionary professional duty. Such discretion is no discretion at all. There is considerable discretion inherent in law enforcement's response to an infinite array of situations implicating public safety on a daily basis. . . .
>
> Finally, we pause to note immunity is intended to act as a shield, not just from liability, but also the burdens of a suit.

*Meinhart*, 627 S.W.3d at 835-36. Accordingly, the trial court was well within its authority to find Trooper Whitworth immune and to dismiss Stewart's claims.

---

> not fire shots if it was quite obvious that they were being threatened with imminent bodily harm.
>
> Although this court intimates no view regarding the weight of the evidence, we recognize that a reasonable person might believe that detective Sharp acted unreasonably in firing the shot that killed Mr. Brandenburg.

*Id.* at 215. Once again, in this case, whether Stewart pointed his gun at Trooper Whitworth prior to being shot is not a genuine issue of material fact that would preclude summary judgment, nor does Trooper Whitworth's entitlement to qualified immunity hinge on that fact.

**CONCLUSION**

Therefore, and for the foregoing reasons, the order entered by the Jefferson Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Adrian Mendiondo
Lexington, Kentucky

BRIEF FOR APPELLEE:

Jason M. Nemes
Robert J. Nemes
Louisville, Kentucky