**GREENWAY ENTERPRISES, INC., Appellant,**

v.

**CITY OF FRANKFORT; Dewey David Huff; and Kenneth Thompson, Appellees.**

**No. 2003–CA–001169–MR.**

Court of Appeals of Kentucky.

Oct. 8, 2004.

Damon B. Willis, Joseph C. Souza, Louisville, KY, for appellant.

Kevin G. Henry, Andrew DeSimone, Lexington, KY, for appellees.

Before BARBER, SCHRODER, and VANMETER, Judges.

## OPINION

SCHRODER, Judge.

Greenway Enterprises, Inc. appeals a summary judgment dismissing their damage claim for delays in providing sewer hookups for its development. We opine that the planning and zoning approval of a preliminary development plan does not create a contract obligating the city to a timetable for the extension of sewer lines to the development, and that in order for city employees to be liable for ministerial duties, there has to be a duty owed to the injured party. Hence, we affirm.

The undeveloped property in question was zoned "Planned Residential" by the Frankfort City Commission. Before the property could be developed, the zoning ordinance required submission to and approval of a development plan by the Frankfort Planning and Zoning Commission.

A development plan has two stages. The "preliminary development plan" outlines and conceptually addresses the future development concerns like number of units, access and general location of roads, availability and general location of electric, water, sewer, waste, etc. Once the developer obtains preliminary development plan approval, it can address the details, such as exact *location* of lot lines, utilities, roads, the location of public improvements, etc., which is submitted to the Planning

and Zoning Commission for approval as a "final development plan." The preliminary plan should locate the external boundary lines for the whole development, generally give the number of units, generally their location, the source for utilities, and provide the general layout of the development. Included are reviews and approvals by the utilities, like the sewer department, that mean, if built, they can service the area. The final development plan can be presented in stages or phases and developed over a period of time instead of all at once. When a final development plan is presented in phases, it generally follows the preliminary development plan and provides the details of the actual internal boundaries, dimensions, and locations, etc., of all the public improvements.

This case involves a preliminary development plan of "The Links at Duckers Lake" which was reviewed by the sewer department and approved for 634 residential units. The final development plan was presented in phases and developed with four phases approved and developed according to the final development plan. When phase five was presented for sewer review of 120 (of the 634) units, there was a problem. The sewer department responded that sewer service was not currently available for phase five due to problems outside the development. Final development plan approval was delayed until the City fixed its collection system. Eventually, the problems were fixed and the development tapped into the City's sewer system.

Greenway Enterprises, Inc. ("Greenway") purchased phase five after the preliminary development plan was approved. Only when it submitted the final development plan for review did it become aware of the problems with the city sewer system and the moratorium on new hookups until the problems were addressed. The delays were costly and Greenway sued the City, Dewey David Huff, the Director of the Frankfort Sewer Department, and Kenneth Thompson, City Manager, in both their official and individual capacities. Greenway asked the trial court to award it compensatory and punitive damages for diminution of the fair market value of the property, lost profits, increased development costs due to the delay, and gross negligence.

The trial court held that KRS 65.2003 protected the City and City Manager Thompson in his official capacity against liability for the refusal to issue, or the revoking of, any permit, as this would be a discretionary act and the statute created immunity absent bad faith. City Manager Thompson and Sewer Director Huff were found to be exercising discretionary functions, in good faith and within the scope of their employment. The Court held that under *Yanero v. Davis*, Ky., 65 S.W.3d 510 (2001), they both were protected in their individual capacities from any liability for discretionary acts. The trial court then granted summary judgment, and Greenway appeals to our Court.

On appeal, Greenway contends the trial court erred in finding the City immune from liability because the City was performing a proprietary function rather than a governmental function and that the trial court erred in finding the City Manager and Sewer Director were exempt from liability because they were "acting outside the scope of their authority." This case presents a good example of a lack of understanding of the planning and zoning statutes and the City's obligations thereunder. Greenway's complaint contains aspects of both tort and contract violations. For an understanding of our opinion, it is important to review the different public steps involved in developing a project like this.

■ The City of Frankfort is authorized by KRS 100.201 to adopt zoning and land use regulations, provided it creates a planning commission and adopts a comprehensive plan. The City zoned the property "Planned Residential" as authorized by its duly enacted zoning ordinance. KRS 100.203(2) allows a zoning ordinance to require submission to and approval *by the planning commission* of a development plan which is defined by KRS 100.111(8) as:

"Development plan" means written and graphic material for the provision of a development, including any or all of the following: location and bulk of buildings and other structures, intensity of use, density of development, streets, ways, parking facilities, signs, drainage of surface water, access points, a plan for screening or buffering, utilities, existing manmade and natural conditions, and all other conditions agreed to by the applicant[.]

The "Amended Development Plan, The Links at Duckers Lake," approved in March of 1998, showed the four existing phases as approved *with subdivision plats recorded,* which would allow housing permits to be obtained. The development plan shows phase five as "Future Development I, 120 Single Family Lots." There is not sufficient detail on the amended development plan to constitute a final development plan. Even if considered a final development plan, or approved development plan, the developer still needs a recordable plat. KRS 100.281 authorizes subdivision regulations to contain a procedure for the submission and approval of preliminary, as well as final plats. A preliminary plat is a working document, a tentative plan, which the developer submits to the planning commission for review and acceptance. The planning commission either accepts it or places conditions or changes on the proposal, including conditions in-cluded in the final development plan. When both parties agree on all the specifications, reservations, conditions, etc., then there exists a blueprint for a final plat. If the subdivision (streets, utilities, etc.) is built according to the blueprint, or a performance bond is posted, a final plat, the finished product, will be approved and recorded. KRS 100.281(1) provides for the recording of final plats only, and for a good reason. Only when the plat becomes final are the parties' rights and expectations fixed. Until a plat becomes final, it cannot be recorded, lots cannot be sold, and building permits cannot be issued. KRS 100.277. Until a plat becomes final by having received final plat approval by the planning commission, the public improvements cannot be accepted by the legislative body for maintenance. KRS 100.277(4); *see also Kelly v. Cook,* Ky. App., 899 S.W.2d 517 (1995).

In this case, Greenway seeks damages for the delay which was caused by the City and its employees' failure to allow phase five to tap into the City's sewer system due to the City's poor maintenance of the collector system. While it is true that the sewer plant had the capacity to handle phase five, the infiltration of ground water into the collector system overloaded the plant's capacity during rain, etc. The City made a decision to not allow new hookups until the system was repaired sufficiently to handle the infiltration problem. The developer of phase five was not yet a customer. The decision of when or if to extend the sewer lines or to allow additional tapins is a legislative decision. In *City of Frankfort v. Byrns,* Ky.App., 817 S.W.2d 462 (1991), a panel of this Court reviewed Frankfort's decision to extend its storm water system, the negligent design and building of the storm water system, and the damage to residents in the areas served by the system. We decided that

the City's decision to service an area with a storm water drainage system was a discretionary legislative act. However, the design, building, and maintenance of said system was ministerial. *Id.* at 464. Greenway's case is similar but with a distinguishing fact. The City did not extend or give final approval to the extension of service to phase five. Greenway was temporarily denied service. Until the hookup was approved, the City was exercising a legislative or discretionary function and has no liability. KRS 65.2003(3). Greenway's contention that it had final development plan approval which gave it the right to sewer hookups is also in error. Because the City decided to delay or not approve the sewer hookups to service phase five, the Planning Commission could not approve the final development plan and the subdivision plats. The holdup was caused by the City, not the Planning Commission. Under KRS 65.2003(3)(c), the denial, suspension, approval, delayed approval, etc., does not subject the City to *any* liability, even if some ministerial aspects are involved in the decision. Therefore the circuit court was correct in dismissing the City of Frankfort from either contract liability or tort liability.

■ Likewise, the City Manager and Sewer Director in their official capacities, cannot be held liable for advising the City to deny hookups until the current system is repaired. In *Yanero v. Davis,* Ky., 65 S.W.3d 510 (2001), our Supreme Court recognized official immunity from tort liability for public employees for acts performed in the exercise of their discretionary functions, when sued in their official capacities. *Id.* at 521–522. Therefore, the trial court was also correct in dismissing the City Manager and Sewer Director in their official capacities.

■ Greenway has also sued the City Manager and Sewer Director individually, on the theory of negligence in the performance of their ministerial duties. The problem with this claim is that there is no *duty* owed to Greenway. The City exercised its discretionary powers to postpone service to phase five. Until the City approves service, the employees are not performing ministerial duties within the phase five area. The infiltration of the collector lines involves the maintenance and repair of a system *outside of* phase five. The duty to provide adequate service, maintenance, etc. is to the existing service area (customers), not future customers. Without a duty, there is no liability.

■ In *City of Florence, Kentucky v. Chipman,* Ky., 38 S.W.3d 387 (2001), our Supreme Court discussed discretionary duties and ministerial duties of a city employee (police officer) and recognized that in order for a claim to be actionable, there has to be a duty owed to the injured party. A duty to the public at large or to the citizens of the city does not create a duty to an injured party. Likewise, in our case, the City, the City Manager, and Sewer Director all have a duty to get the sewer system repaired, but the duty is not owed to Greenway as a future customer, but rather to existing customers. *See Yanero,* 65 S.W.3d at 522. Again, the trial court's ruling was correct albeit on other grounds.

For the foregoing reasons, the judgment of the Franklin Circuit Court is affirmed.

ALL CONCUR.