RENDERED: MARCH 22, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0439-MR

MARK EDWARD PORTWOOD             APPELLANT

v.        APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE DIANE MINNIFIELD, JUDGE
ACTION NO. 17-CI-03892

DOWELL HOSKINS-SQUIER;
ALBERT MILLER; CASEY
KAUCHER; DEREK PAULSEN;
DOUGLAS BURTON; JEFFREY
NEAL; KEITH LOVAN; MARK
FEIBES; ROBERT BAYERT; ROGER
T. MULVANEY; AND WALTER
HALL             APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CETRULO, AND TAYLOR, JUDGES.

CETRULO, JUDGE: On October 31, 2016, Appellant Mark Portwood

("Portwood"), a pedestrian, crossed Clays Mill Road in Lexington at the

intersection of Blue Ash Drive. He was struck by a motorist and suffered serious

injuries. There were no crosswalks in that area of Clays Mill Road at that time. A few weeks prior to the accident, the local authorities had approved and subsequently installed a crosswalk at Rosemont Garden and Clays Mill Road, about 1,200 feet from where Portwood was struck.

On October 30, 2017, Portwood sued Lexington Fayette Urban County Government ("LFUCG") and individual employees for negligence in causing his injuries. The Complaint alleged that LFUCG, and certain individual employees with LFUCG ("Appellees"), had previously determined that pedestrian crosswalks were needed at or near the area where Portwood was injured, but that they had failed to install them. In response to the lawsuit, LFUCG and its employees moved the trial court to dismiss the action on grounds of immunity. The trial court granted the motion to dismiss all claims, and the matter was appealed to this Court in 2020.

In the prior appeal, this Court initially affirmed the trial court's dismissal of all claims. *Portwood by and Through Schmelz v. LFUCG*, No. 2018-CA-001210-MR, 2020 WL 1332982, at *8-9 (Ky. App. Mar. 20, 2020). Portwood then filed a petition for rehearing, which this Court granted, and withdrew the previous opinion. In the revised opinion, this Court upheld the grant of summary judgment in favor of LFUCG and the LFUCG employees acting in their official capacities on the basis of sovereign immunity. *Portwood by and Through Schmelz*

*v. LFUCG*, No. 2018-CA-001210-MR, 2020 WL 4725958, at *5 (Ky. App. Aug. 14, 2020). However, the final opinion remanded the matter to the trial court to allow "limited discovery regarding whether the LFUCG employees, acting in their individual capacities, are entitled to qualified official immunity pursuant to *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001), and for further proceedings following the trial court's resolution of that issue." *Id.* at *1. The Supreme Court denied discretionary review, and the matter returned to the trial court for further proceedings.

The trial court then entered an order allowing for discovery as directed by this Court. It appears that there are no further complaints of insufficient discovery opportunity. In early 2023, the individual defendants moved again for summary judgment on grounds of qualified official immunity. On March 28, 2023, the trial court granted the motion for summary judgment, specifically ruling that the actions or failure of the LFUCG employees to install a crosswalk was discretionary and thereby entitled them to qualified immunity. The court further held that any delay in construction of the crosswalk was not the proximate, legal cause of the accident which caused Portwood's injuries as he was not struck at that location:

> Taking [Portwood's] March 13, 2023 affidavit as true, even if [LFUCG's] failure to construct a crosswalk at the Clays Mill/Lane Allen/Rosemont Garden intersection was the but-for cause of [Portwood's] injuries, the Court does

> not see it as appropriate to hold [LFUCG] liable for an accident which occurred at a different intersection nearly a quarter of a mile (approximately 1200 feet) away.

This appeal followed.

## STANDARD OF REVIEW

We review summary judgments to determine whether the trial court properly found that there were "no genuine issues of material fact" and that "the moving party is entitled to judgment as a matter of law." *Carter v. Smith*, 366 S.W.3d 414, 419 (Ky. 2012) (citation omitted). "Because no factual issues are involved and only a legal issue is before the Court on the motion for summary judgment, we do not defer to the trial court and our review is *de novo*." *Univ. of Louisville v. Sharp*, 416 S.W.3d 313, 315 (Ky. App. 2013) (citation omitted).

## ANALYSIS

"[P]ublic officers and employees are entitled to 'qualified official immunity' for negligent conduct when the negligent act or omissions were (1) discretionary acts or functions, that (2) were made in good faith . . . and (3) were within the scope of the employee's authority." *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006) (citation omitted), *as corrected* (Sep. 26, 2006).[1] Discretionary acts have been defined as "those involving the exercise of discretion

---

[1] Portwood addresses only steps 1 and 2. As such, we address only those elements.

and judgment, or personal deliberation, decision, and judgment[.]" *Id.* at 477

(citing *Yanero*, 65 S.W.3d at 522).

"Conversely, no immunity is afforded for the negligent performance

or omissions of a ministerial act, or if the officer or employee willfully or

maliciously intended to harm" another. *Id.* at 475 (citing *Yanero*, 65 S.W.3d at

523). "[A] duty is ministerial when the officer's duty is absolute, certain, and

imperative, involving merely execution of a specific act," *i.e.*, where the employee

"has no choice but to do the act." *Patton v. Bickford*, 529 S.W.3d 717, 724 (Ky.

2016) (internal quotation marks and citations omitted), *as modified on denial of*

*rehearing* (Aug. 24, 2017).

Recently, the Supreme Court provided additional guidance for

analyzing a qualified official immunity claim involving public employees. In

*Meinhart v. Louisville Metro Government*, 627 S.W.3d 824, 829-30 (Ky. 2021),

the Court stated that

> [w]e recognize trial courts must make certain
> factual findings when deciding a party's entitlement to
> qualified official immunity, and a modicum of discovery
> may be necessary before the court can reasonably make
> the determination. Those findings should be complete
> enough to enable adequate appellate review but must
> necessarily be limited to the very narrow issues required
> to determine if immunity is applicable, including the
> actor's status as a government official; the
> ministerial/discretionary distinction; if the act was
> ministerial, was the actor negligent; and, if the act was
> discretionary, was it done in good faith and within the

scope of the officer's authority. However, the question of immunity is one of law that involves no disputed facts. Thus, examining the pertinent rule, policy, or regulation governing the challenged conduct is all that is necessary to make the characterization.

In Portwood's prior appeal to this Court, the panel concluded, upon rehearing, that discovery was necessary before the trial court could reasonably make the determination and render factual findings of whether these individual employees were entitled to immunity. *Portwood by and Through Schmelz v. LFUCG*, No. 2018-CA-001210-MR, 2020 WL 4725958, at *1 (Ky. App. Aug. 14, 2020). On remand, the trial court permitted discovery to proceed, and nearly all of the individual employees were deposed. Each LFUCG employee submitted a copy of his or her job description. Appellees argued below that nothing in their respective job duties, nor in any ordinance, statute, or regulation imposed a duty upon any of them to install any crosswalk on Clays Mill Road.

In contrast, Portwood argued that the employees were on notice of the dangerous pedestrian area where the collision occurred and that they had determined that pedestrian crosswalks, crosswalk markings, pedestrian signs, or support poles were necessary near the area where the collision occurred, but that they failed to implement that decision. In support, Portwood presented a 2002 safety benefit study LFUCG had conducted that recommended installing crosswalks. Additionally, local citizens had requested installation of crosswalks.

-6-

Discovery confirmed that LFUCG decided to install crosswalks at Rosemont Garden[2] in early October 2016. A purchase order to do so was signed on October 27, and a work order was issued on October 31, 2016. Tragically, Portwood was injured on that very same date. Crosswalk markings and signals were installed at the Rosemont Garden intersection a few weeks later in November 2016.

Portwood argues that the fact that these individual employees were on notice of potential safety concerns created a ministerial duty for them to install crosswalks and pedestrian controls. Relying on *City of Frankfort v. Byrns*, 817 S.W.2d 462 (Ky. App. 1991), Portwood also asserts that once the decision to design or construct something has been made, carrying out subsequent action to complete the project is a ministerial duty for which a local government may incur liability. However, we conclude that Portwood misconstrued *Byrns*.

In *Byrns*, the plaintiffs sued the City of Frankfort after a drainage ditch flooded their property. *Byrns*, 817 S.W.2d at 463. The city then "elected to enlarge the capacity of its existing drainage system"; however, "[n]otwithstanding the subsequent changes to the system, more flooding" and damage occurred at the plaintiffs' property. *Id.* This Court ruled that once the city made the decision to

---

[2] Again, this location was approximately 1200 feet from the location of Portwood's accident.

design and construct the system (a discretionary action), its subsequent actions in designing and building the system were ministerial. *Id.* at 464.

However, here, there is no evidence that a decision was ever made to install safety controls or crosswalks at the site of Portwood's accident. Portwood claims that LFUCG's failure to install the Rosemont Garden crosswalk "on time," was ministerial and caused his accident. However, LFUCG's decision to install nearby crosswalks at Rosemont Garden was not made until a few weeks before the accident. And the record reflects that less than 30 days elapsed from the decision to make crosswalk improvements at Rosemont Garden and the completion of that project. Although Portwood attempts to compare this to *Byrns*, we are not persuaded. Most importantly, LFUCG never decided to install crosswalks at the site of Portwood's accident. Moreover, *Byrns* dealt with alleged negligent design and construction of the sewage system improvements after the resources were appropriated and the project was completed. *Id.* at 464. That is not the case here.

Likewise, this Court has held that decisions such as this – whether to place or install safety measures on specific portions of roads – are discretionary acts entitled to qualified immunity. *Est. of Clark ex rel. Mitchell v. Daviess Cnty.*, 105 S.W.3d 841, 846 (Ky. App. 2003). In *Clark*, our Court distinguished between actions taken to maintain or remove signs or guardrails and actions determining whether to install them. *Id.* There,

the members of the Daviess County Fiscal Court (in conjunction with the engineers, road foreman, and sign director) had undertaken a comprehensive scheme to evaluate and to maintain county roadways. There was considerable testimony regarding the methods by which roadways were inspected and how recommendations were made for action to be taken. Key decision-makers recounted that they contemplated and balanced public policy factors and weighed budgetary concerns.

*Id.* at 845.

Ultimately, a recommendation that a guardrail be installed "had been submitted, considered, and specifically rejected." *Id.* Thereafter, an individual was allegedly injured due to the failure to install a guardrail. *Id.* The Court found that the evidence supported that these were discretionary decisions that entitled the decision makers to immunity. *Id. See also Bolin v. Davis*, 283 S.W.3d 752, 759 (Ky. App. 2008) (citation omitted) (holding a decision not to install a proper warning sign or guardrail constituted an exercise of discretion and was therefore not a ministerial act).

However, here – just as in *Clark* – there was evidence that the officials made a discretionary decision not to install a crosswalk at the site of Portwood's accident based on various fiscal factors, other road plans, and geographic considerations. *See Clark*, 105 S.W.3d at 845. As such, "[n]o evidence supports the contention that the decision was a matter of routine involving no policy-making decision or significant judgment." *See id.*

-9-

Similarly, in *Greenway Enterprises, Inc. v. City of Frankfort*, 148 S.W.3d 298, 301 (Ky. App. 2004), we rejected a theory that the city employees could be held liable for alleged delay in approval of sewer hookups, to a development area that did not have service. There, we held that there was no duty owed to the developers <u>until</u> the city approved service, and then it would have a duty to provide adequate service and maintenance. *Id.* at 302 (emphasis added).

Portwood also relies on *LFUCG v. Smolcic*, 142 S.W.3d 128 (Ky. 2004), which addressed maintenance of traffic control devices. While this case has somewhat similar facts, the LFUCG employees in *Smolcic* were sued when pedestrians were struck while crossing a roadway with installed crosswalks. *Smolcic*, 142 S.W.3d at 130-31. The trial court dismissed the claims against them, concluding that the allegations against the employees concerned discretionary acts and, thus, they were entitled to qualified official immunity. *Id.* This Court "reversed the trial court based on its conclusion that the acts of the individual employees clearly fall within the definition of ministerial function as set out by the Supreme Court in *Yanero v. Davis*." *Id.* at 136 (internal quotation marks omitted). And the Supreme Court agreed that "[g]enerally, the maintenance of traffic-control devices is a ministerial function." *Id.* (citing *Clark*, 105 S.W.3d at 846 and *Shearer v. Hall*, 399 S.W.2d 701, 704 (Ky. 1965), *as modified on denial of rehearing* (Mar. 25, 1966)).

In *Smolcic*, the traffic controls had already been installed and the claim was for failure to *maintain* them. *Id.* Thus, the Court held "that the trial court erred as a matter of law in concluding that the allegations against the individual employees consisted entirely of discretionary acts." *Id.* Further, the Court remanded the matter because the record did not sufficiently establish "which, if any, of the individual employees had the duty to maintain the traffic-control devices." *Id.*

Importantly, here, Portwood's claim does not include an allegation of a failure to maintain. Rather, Portwood asserts that certain employees should have required installation of pedestrian crosswalks earlier. However, it was not established that any of these individuals had any duty to do so. As such, we do not find *Smolcic* to be persuasive here.

Additionally, as *Meinhart* directed, "examining the pertinent rule, policy, or regulation governing the challenged conduct is all that is necessary to make the characterization." *Meinhart*, 627 S.W.3d at 830. Here, however, we find no statute, administrative regulation, rule, or ordinance that required installation of crosswalks. Portwood argued below that such a duty was created by Kentucky's adoption of the Manual on Uniform Traffic Control Devices for Streets and

Highways ("MUTCD").[3]  Secondarily, Portwood asserted that a duty is created

under the American Association of State Highway and Transportation Officials

("AASHTO")[4] standards and guidelines to provide safe pedestrian crosswalks in

the area where the collision occurred.  However, while these guidelines describe

the application of traffic control devices once they are installed, they do not create

a legal duty requiring installation at any particular location.  MUTCD Section

1A.09.  Instead, our precedent leaves that decision to the discretion of the proper

authority.  *See Meinhart*, 627 S.W.3d 824.  Portwood's position would mean that

whenever future infrastructure plans are discussed – and until they are completed

and actually installed – public servants could be held liable for any injuries

resulting during that interim period.  This position is not warranted by our case

law.  Indeed, as such projects generally take a number of years to design, fund and

---

[3] Kentucky has adopted the MUTCD, which requires the Department of Highways to promulgate and adopt a manual of standards for control of traffic devices and the MUTCD, by regulation, is the standard for all traffic control devices installed on any roads throughout the Commonwealth. The MUTCD provides that traffic control devices, advertisements, announcements, and other signs or messages within the highway right-of-way shall be placed only as authorized by a public authority or the official having jurisdiction, for the purpose of regulating, warning, or guiding traffic.  MUTCD, Section 1A.08.  Although not binding, as an unpublished opinion, this Court has held that the MUTCD does not create "a duty requiring installation of a traffic control device at any particular location." *Est. of Morris v. Smith*, No. 2012-CA-001503-MR, 2014 WL 1998726, *4 (Ky. App. May 16, 2014).  We find such holding persuasive here.

[4] AASHTO is a non-profit, non-partisan association representing highway and transportation departments throughout the country and promoting the development, operation, and maintenance of an integrated national transportation system.

then complete, such a position could have catastrophic effects on local governments and public servants across the Commonwealth.

Our review of the caselaw convinces us that a distinction exists between when a duty has already been created and when public officials are determining whether to make a certain decision. These cases reinforce that immunity may be lost when a duty is already created and then the public official fails to perform their duty to maintain or otherwise acts negligently in removing signs or guardrails. However, here, there was no such duty upon the Appellees to install a crosswalk.

We find no error in the trial court's decision that these individual employees were acting in a discretionary manner when determining whether, and when, to place crosswalks on Clays Mill Road. We cannot turn a blind eye to the realities of such discretionary decision, which still requires engineering studies, funding analysis and procurement, and execution. The fact that the decision was made to install a crosswalk 1,200 feet from the location of the accident before Portwood was injured does not transform the decision from discretionary to ministerial nor require that it be effectuated overnight. As such, LFUCG and its employees had made only discretionary decisions.

However, finding that the acts were discretionary does not end the inquiry. *Yanero* also requires that the discretionary acts be "in good faith; and

-13-

. . . within the scope of the employee's authority." *Yanero*, 65 S.W.3d at 522 (citation omitted). Once the employee has shown "that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act [or omission] was not performed in good faith." *Id.* at 523.

On appeal, Portwood alleges that there was an absence of good faith because the employees ultimately decided to implement pedestrian controls and install a crosswalk 1,200 feet away from the site of his accident, just prior to the collision. If a public officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive, he acts in "bad faith," and is not entitled to qualified official immunity. *Sloas*, 201 S.W.3d at 481. However, Portwood produced no evidence that LFUCG or its employees intended to harm him or acted with a corrupt motive.

In *Sloas*, a deputy jailer was sued over his supervision of prisoners on a roadside clearing project when an inmate was injured. *Id.* at 473. The Supreme Court held that the jailer's "primary decision, which was purely discretionary, was [whether] to use the work program at all." *Id.* at 484. Additionally, the Court found there was "simply no 'bad faith' shown by [the jailer's] involvement and actions, as '[t]he power to exercise an honest discretion necessarily includes a power to make an honest mistake of judgment.'" *Id.* (citation omitted).

-14-

Similarly, here there was no evidence that any of the LFUCG employees had any subjective intent to harm Portwood. Likewise, despite a great deal of discovery, there was no evidence that any employee violated a clearly established obligation to install a crosswalk. Nevertheless, Portwood argues a study indicated additional crosswalks in the area would be beneficial. However, the fact that a prior study made such a recommendation does not constitute evidence of bad faith by LFUCG or the individual officers or employees. As recognized by many courts, fear of being sued, particularly for not yet performing a discretionary act, would "dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties." *Caneyville Volunteer Fire Dep't v. Green's Motorcycle Salvage, Inc.*, 286 S.W.3d 790, 810 (Ky. 2009) (citing *Crawford-El v. Britton*, 523 U.S. 574, 591 n.12, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998)). Therefore, LFUCG did not act in bad faith.[5]

Finally, Portwood argues that the trial court erred by further determining as a matter of law that the subsequent installation of a crosswalk at the Rosemont Garden intersection of Clays Mill Road was not a proximate cause of the pedestrian/auto accident that injured Portwood. Portwood's evidence consisted of an affidavit that he would have walked approximately 1,200 feet away from

---

[5] As noted, Portwood does not raise an argument regarding whether the alleged action (or inaction) was within the scope of LFUCG employees' employment. As such, our analysis ends here.

where he was injured if the Rosemont Garden crosswalk had been installed prior to his accident. Portwood argues that proximate cause is an issue best left for the jury; therefore, summary judgment was inappropriate. Appellees respond, however, that proximate cause is an issue of law to be decided by the court, citing *Patton*, 529 S.W.3d at 731.

In *Patton*, the Supreme Court explained that "[p]roximate causation captures the notion that, although conduct in breach of an established duty may be an actual but-for cause of the plaintiff[']s damages, it is nevertheless too attenuated from the damages in time, place, or foreseeability to reasonably impose liability upon the defendant." *Patton*, 529 S.W.3d at 731. Here, the trial court clearly held as a matter of law that there was no breach of an established ministerial duty, and that the acts complained of were, in fact, discretionary, therefore, entitling the employees to qualified immunity. The trial court further noted that it would not be appropriate to hold these individuals liable for an accident that occurred at a different intersection nearly a quarter of a mile away. However, this was an alternative basis for summary judgment, "even if it were determined that any of the defendants owed a ministerial duty or acted in bad faith[,]" which the trial court did not find. Thus, finding no error in those rulings, and no breach of a duty, we need not address whether Portwood's damages were too attenuated from the

alleged failure to construct a crosswalk until after these events occurred. *See id.* at 731.

For the foregoing reasons, we affirm the judgment of the Fayette Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Sandra M. Varellas
D. Todd Varellas
Lexington, Kentucky

BRIEF FOR APPELLEES:

Evan P. Thompson
Carlos Ross
Lexington, Kentucky