RENDERED: JULY 3, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0877-MR

KENTUCKY BLUEGRASS
EXPERIENCE RESORT, ANDREW
HOPEWELL, AND JOEY SVEC                                         APPELLANTS


                          APPEAL FROM WOODFORD CIRCUIT COURT
v.                        HONORABLE JEREMY MATTOX, JUDGE
                          ACTION NO. 22-CI-00017


WOODFORD COUNTY BOARD OF
ADJUSTMENTS; AND CITY OF
MIDWAY                                                          APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, A. JONES, AND KAREM, JUDGES.

JONES, A., JUDGE: This appeal stems from the Woodford Circuit Court's order

granting the City of Midway's (Midway's) motion to dismiss pursuant to CR[1]

12.02(f). Following our review of the record and the law, we affirm.

---

[1] Kentucky Rules of Civil Procedure.

## II. BACKGROUND

In 2020, the appellant, Kentucky Bluegrass Experience Resort, LLC (KBER) purchased two hundred and forty acres of farmland located in Woodford and Scott Counties, with approximately ninety-seven acres of this tract located in Woodford County. Those ninety-seven acres are located in an Agricultural Zoning District and contain "a portion of the Elkhorn Creek[,]" "a spring stream sink, and the natural rolling hills of the central bluegrass." (Record (R.) at 18.) KBER planned to build and operate a recreational vehicle (RV) park on this property and to this end sought a conditional use permit under the category of "tourist destination expanded" from the Woodford County Board of Adjustments (BOA). In Woodford County's zoning ordinance,[2] one such conditional use for an agricultural zone is for a "Tourist Destination Expanded . . . . A unique, regionally recognized existing landmark or historic structure that is primarily known for its existing architectural significance and/or uniqueness, that promotes tourism and the overall economy, which naturally draws the general public as a destination[.]" Woodford Zoning Ordinance, Article VII, 701.4 (N). Under KRS[3] 100.237, the

---

[2] "Versailles – Midway – Woodford County Zoning Ordinance." (Hereinafter "Woodford Zoning Ordinance.")
https://www.woodfordplanning.org/_files/ugd/c16085_1510058b5542430389175947bd473093.pdf. (Last accessed May 20, 2025.)

[3] Kentucky Revised Statutes.

BOA is empowered "to hear and decide applications for conditional use permits to allow the proper integration into the community of uses which are specifically named in the zoning regulations which may be suitable . . . only if certain conditions are met[.]"

On March 3, 2021, the BOA granted KBER a conditional use permit; however, one of the mandatory conditions was that "[a]ll campsites and facilities shall have City public water and sewer" from Midway. (R. at 30.) The property was outside Midway city limits, but KBER informed the mayor of Midway that it was willing to be annexed by the city in order to receive sewer services. (R. at 56.) The mayor initially expressed enthusiasm at the prospect of increased tourism to the Midway area. However, once the expansive design of the RV park became apparent, KBER's proposal generated significant controversy in Midway and Woodford County. The proposed park would contain 545 guest sites, a sizable number even reduced from an initial proposal of 973 sites. (R. at 55, 120.) Midway has a current population of approximately 1,800 people, and a number of residents expressed concern that the sheer size of the project would harm the rural character of the area. (R. at 41, 57.)

The Midway City Council met on October 18, 2021, and unanimously voted to deny sewer service to KBER. (R. at 57.) As summarized by KBER, the mayor indicated that there were "too many unanswered questions, this growth was

not sustainable and that Midway should draft a Resolution that 'clearly states to developers that the City is not interested in development that does not fit the Comprehensive Plan.'" (R. at 62.)

After Midway denied sewer service, KBER returned to the BOA on November 12, 2021, seeking an amendment of the continued use permit. Instead of using city water and sewer, KBER's proposed amendment would allow it to buy water service from Kentucky American Water and to use a private wastewater treatment system sufficient to comply with the Clean Water Act. In a public hearing before the BOA on the proposed amendment, KBER asserted that this private wastewater treatment system would have a Kentucky Pollution Discharge Elimination System (KPDES) operating permit, the system would be monitored and maintained by a Kentucky-certified operator, and the effluent would be tested to maintain water quality. (R. at 43, 62-63.) KBER presented professional engineers to speak in favor of the amendment, one of whom worked for the firm which would supply the proposed wastewater treatment system. However, many area residents also took this opportunity to speak in opposition to the RV park, citing not only the project's large scale, but also the potential environmental damage if the private wastewater system should fail, which had occurred elsewhere in the Commonwealth. (R. at 42.) Notably, the minutes of the BOA hearing contained a statement from an official in neighboring Scott County:

Chad Wallace, Magistrate in Scott County, publicly presented a letter from Chase Azevedo, General Manager of Georgetown Municipal Water Sewer Service, Mayors of Midway and Versailles; Joe Covington, Scott County Judge Executive and Mayor Tom Prather of Georgetown. Mr. Wallace summarized the letter of record. Mr. Wallace noted that Scott County and taxpayers of Georgetown have spent over 25 million dollars and the taxpayers of Kentucky have had to clean up the private wastewater facilities. He does not want to see it happen in any community and hopes that the Board strongly consider denial of any Conditional Use Permit that would allow construction and operation of a private wastewater treatment plant.

(R. at 44-45.)

On January 3, 2022, the BOA voted to deny KBER's proposed amendment to the continued use permit. KBER then filed a complaint and petition for a declaration of rights against the BOA, "pursuant to KRS 100.347(1) by a party or entity claiming to be injured or aggrieved by a final action of a board of adjustments." (R. at 8-9.) After initiating its suit against the BOA, KBER contacted the mayor of Midway and once again requested sewer service. In its letter, KBER indicated it had further reduced its request for services to 213 guest RV sites, 82 guest cottages, and 26 employee / owner sites. (R. at 58.) KBER also stated that it was not asking for city water service, nor was it asking for annexation at this time. Nonetheless, after hearing this request in a meeting held on March 21, 2022, "[t]he Midway City Council responded by adopting a motion to table this request indefinitely." (R. at 84.)

On April 20, 2022, KBER amended its earlier complaint and petition for a declaration of rights in order to add Midway as a defendant. KBER asserted three claims specific to Midway: (1) a petition for an order requiring Midway to provide it with municipal water service, arguing unlawful discrimination in denial of service; (2) a claim that Midway was equitably estopped from denying sewer service based on the mayor's earlier expression of support for the project; and (3) a similar claim that Midway had waived its right to deny sewer service based on the mayor's early support. Midway moved the trial court to dismiss the complaint pursuant to CR 12.02(f), arguing that KBER had failed to state a claim upon which relief could be granted. On May 18, 2023, the trial court granted Midway's motion to dismiss and denied KBER's follow up motion to alter, vacate, or amend the order pursuant to CR 59.05. After filing its notice of appeal, in a subsequent motion before this Court, KBER asked us to dismiss the BOA from the appeal on grounds that the trial court's order had not resolved any issues between KBER and the BOA. We granted the motion to dismiss the BOA as a party, and this appeal proceeded as related to Midway.

## II. STANDARD OF REVIEW

"Since a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the

issue *de novo*." *Gregory v. Hardgrove*, 562 S.W.3d 911, 913 (Ky. 2018) (quoting *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010)). "In ruling on a motion for failure to state a claim, the trial court should take all the allegations in the complaint as true and not dismiss unless the pleading party appears not to be entitled to relief under any set of facts which could be proven in support of his claim." *Mouanda v. Jani-King International*, 653 S.W.3d 65, 70 (Ky. 2022) (citations and internal quotation marks omitted). "Stated another way, the court must ask if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief?" *Fox*, 317 S.W.3d at 7.

To the extent that we are asked to review the actions of a legislature regarding a zoning or city planning issue, we note that such decisions are not subject to judicial review "except for the limited purpose of considering whether such determinations are arbitrary." *Hilltop Basic Resources, Inc. v. County of Boone*, 180 S.W.3d 464, 467 (Ky. 2005) (citing *American Beauty Homes Corp. v. Louisville & Jefferson County Planning & Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964)). "Arbitrariness review is limited to the consideration of three basic questions: (1) whether an action was taken in excess of granted powers, (2) whether affected parties were afforded procedural due process, and (3) whether determinations are supported by substantial evidentiary support." *Id.* (citing *American Beauty*, 379 S.W.2d at 456).

### III. ANALYSIS

KBER presents five separate issues on appeal. First, KBER argues that Midway, acting as a public utility, discriminated against it with respect to rates and services. Second, KBER contends Midway violated KRS 96.910 and KRS 96.539 by its failure to provide sanitary sewer services. Third, KBER argues Midway is estopped from denying sewer services to KBER. Fourth, KBER asserts Midway waived its right to deny sanitary sewer services. Fifth, and finally, KBER contends the trial court erroneously denied KBER an opportunity to amend its complaint to cure deficiencies.

In its first issue on appeal, KBER argues that Midway unlawfully discriminated against it by refusing to provide sewer services, characterizing the issue as one of "rates and services." To this end, KBER cites *Louisville & Jefferson County Metropolitan Sewer District v. Joseph E. Seagram & Sons*, 211 S.W.2d 122, 126 (Ky. 1948), for the proposition that "[d]iscrimination in rates or services is not permitted by municipalities any more than private utilities." However, *Louisville & Jefferson County* is not directly relevant, as that case centered around whether the sewer district could charge those outside the city rates which were fifty percent higher than persons or corporations inside city limits. *Id.* at 124.

*Louisville & Jefferson County* does not answer the question as to whether a property owner outside city limits may demand city sewer services, and Midway contends KBER cannot demonstrate any such entitlement under the law. KBER argues "KRS 96.150(1) expressly authorizes the City of Midway to extend sewer services outside the city limits," quoting, in relevant part, the portion of the statute which states, "[a]ny city that owns or operates a water supply or sanitary sewer system may extend the system into, and furnish and sell water and provide sanitary sewers to any person within, any territory contiguous to the city, and may install within that territory necessary apparatus[.]" (Appellants' Brief at 11-12 (quoting KRS 96.150(1)).) However, KRS 96.150(1) cannot be interpreted in such a way as to create an obligation for Midway. The statute repeatedly uses the word "may" in describing the ability of a city to furnish sewer services outside its boundary. "When considering the construction of statutes, KRS 446.010(20) provides that 'may' is permissive, and 'shall' is mandatory." *Alexander v. S & M Motors, Inc.*, 28 S.W.3d 303, 305 (Ky. 2000). In applying this principle in *Alexander*, the Kentucky Supreme Court reasoned that the statute involved in that case "authorize[d], but [did] not mandate, an award of attorney fees and costs[.]" *Id*. Similarly, because KRS 96.150(1) uses the word "may" to describe a city's ability to sell water and sewer services outside its boundary, it is our view that the statute authorizes, but does not mandate, the provision of such services.

For its part, Midway correctly cites multiple decisions from our previous Court of Appeals in support of the view that the extension of utility services is a discretionary matter for the city. *See, e.g.*, *Foley v. Kinnett*, 486 S.W.2d 705, 706 (Ky. 1972) (extension of water services outside the city "is a matter that addresses itself to the sound discretion of the city"); *Johnson v. Reasor*, 392 S.W.2d 54, 56 (Ky. 1965) ("[A] municipality exercises a discretionary function in deciding whether or not to extend its utility system to an entirely new section within its territorial limits, and it cannot be compelled to do so at the instance of a prospective consumer, at least if its basis for refusing is in any way reasonable . . . ."); *Austin v. City of Louisa*, 264 S.W.2d 662, 664 (Ky. 1954) ("A municipally owned water company may extend its distribution system beyond the city limits, KRS 96.150, but in the case at bar it did not do so. It merely sold water to individual users outside the city, something it was empowered to do by statute . . . but not required to do."). A later opinion by this Court reaffirmed that a city's choice as to whether to extend sewer lines is a discretionary legislative decision. *Greenway Enterprises, Inc. v. City of Frankfort*, 148 S.W.3d 298, 301 (Ky. App. 2004) (citing *City of Frankfort v. Byrns*, 817 S.W.2d 462 (Ky. App. 1991)).

More generally, decisions by the Kentucky Supreme Court have reinforced the deference the judicial branch will afford local legislators in making decisions for their communities. "There is a well established rule of

noninterference by the judiciary with the exercise of discretionary powers of municipal corporations." *Conrad v. Lexington-Fayette Urban Cnty. Government*, 659 S.W.2d 190, 195 (Ky. 1983). The Kentucky Supreme Court succinctly reaffirmed that same principle more than two decades later in *Commonwealth v. Jameson*, 215 S.W.3d 9, 35 (Ky. 2006), stating, "[t]he judiciary should not second-guess the judgment of local government officials." KBER's conclusory assertion that Midway's refusal is unlawful discrimination will not suffice to overcome the controlling precedents, which view the matter as one of local legislative discretion.

KBER's second issue on appeal, that Midway violated KRS 96.910 and KRS 96.539 when it failed to provide sewer services, fails for the same reasons as the first. KRS 96.910 is a declaration of policy:

> The public health, safety and welfare require that new and alternative measures be authorized to encourage, promote, and make more feasible the provision of facilities for the collection, treatment, and disposal of sewage by cities, by sewer service charges established with due consideration for cost of necessary new or additional facilities, benefits received and to be received, and approximate ultimate equality of financial burden.

KRS 96.910. At no point in the statute does the General Assembly impose an affirmative obligation upon a municipality. Similarly, KRS 96.539 requires a city to "develop rules to govern extensions of service to unserved customers and areas." Although this statute requires a city to generate rules regarding expansion of sewer service, there is nothing in this statute that requires Midway to provide sewer

-11-

services to an entity outside its borders, or which contradicts the previously cited caselaw indicating that such a decision to provide services outside its borders is a matter of legislative discretion.

For its third issue on appeal, KBER asserts Midway is estopped from denying sewer service based on the initial support expressed by Midway's mayor for the project. KBER contends that it relied, in good faith, upon support expressed by the mayor on May 6, 2021, and that it would not have purchased the property for its RV park without that support. (Appellants' Brief at 19.)

A party claiming equitable estoppel must prove the following essential elements:

> (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

*Weiand v. Board of Trustees of Kentucky Retirement Systems*, 25 S.W.3d 88, 91 (Ky. 2000). Furthermore, equitable estoppel only applies to a governmental entity under exceptional circumstances. *J. Branham Erecting & Steel Service Co., Inc. v. Kentucky Unemployment Ins. Comm'n*, 880 S.W.2d 896, 897 (Ky. App. 1994).

KBER's brief fails to address the essential elements of equitable estoppel, but it would not be reasonable in any event for KBER to assume the

mayor's initial support would serve to bind the votes of Midway's city council in the future. "In order to prevail on a theory of estoppel, there must be proof not only of an intent to induce action or inaction on the party to be estopped, but also of *reasonable* reliance by the party claiming the estoppel." *Kindred Nursing Centers Ltd. Partnership v. Brown*, 411 S.W.3d 242, 247 (Ky. App. 2011) (emphasis added) (citing *Gailor v. Alsabi*, 990 S.W.2d 597, 604 (Ky. 1999)). Moreover, as Midway points out, the sequence of events outlined by KBER is also unreasonable, as it lacks fundamental logic regarding cause and effect. KBER grounds its claim of equitable estoppel in the mayor's support for the project in 2021; however, KBER had already purchased the property in November 2020. (R. at 18.) A claim of detrimental reliance should not presuppose the existence of a time machine. Because KBER cannot show how it reasonably relied on the mayor's representations and suffered a detrimental result, the trial court did not err in dismissing this claim.

In its fourth issue on appeal, KBER asserts Midway has waived the right to deny sanitary sewer access based on the fact that it granted sewer access to other adjoining properties. KBER quotes *Moore v. Asente* for the proposition that "[w]aiver requires proof of a knowing and voluntary surrender or relinquishment of a known right. However, waiver may be implied by a party's decisive, unequivocal conduct reasonably inferring the intent to waive, as long as statements

-13-

and supporting circumstances [are] equivalent to an express waiver." *Moore v. Asente*, 110 S.W.3d 336, 360 (Ky. 2003) (internal quotation marks and citations omitted). In quoting *Moore*, KBER correctly defines waiver, but it fails to elaborate on how Midway's decision to grant one property owner sewer service while denying service to another might be construed as a waiver, nor does it provide any law which would support such a claim. Even if we accept all of KBER's factual allegations as true, as we must for a dismissal under CR 12.02, there are no facts under these circumstances which would support a claim of waiver, *i.e.*, that Midway has relinquished a known right.

In its fifth and final issue on appeal, KBER argues the trial court erroneously denied KBER the opportunity to amend its complaint under CR 15.01. KBER asserts the following:

> At oral argument on August 11, 2022, and in KBERs' [*sic*] Response on 7/1/2022 and in KBERs' [*sic*] Reply on 7/27/2022, Plaintiffs requested that if deficiencies were found in Plaintiffs' Complaint, that KBER be given leave to seek to cure those deficiencies identified by the Court . . . . [T]he Court noted that if these request [sic] for leave to amend was in the record, he could hold the matter in abeyance and grant KBER leave to make such amendments. This opportunity was never afforded to KBER.

(Appellants' Brief at 20.) For its part, Midway points out that KBER tended to "add[] more documents outside the pleadings without concern for the rules simply under the belief that if the court found its claims lacking, it could simply amend to

-14-

add those allegations and documents later." (Appellee's Brief at 29.) More significantly, Midway points out that KBER "never actually moved to amend and never explained how it planned to amend its complaint." (Appellee's Brief at 29.)

A careful examination of the record reveals that Midway has correctly assessed the facts surrounding this issue. CR 15.01 states that "leave to amend 'shall be freely given when justice so requires[.]'" *Graves v. Winer*, 351 S.W.2d 193, 197 (Ky. 1961) (quoting CR 15.01). That said, an examination of the record indicates KBER never unambiguously requested leave to amend its complaint. KBER asserts that it preserved this issue for appellate review in "KBER's Response to Motion to Dismiss at ROA at 126." However, KBER's statement to the trial court was not an explicit request: "If it is necessary to seek to amend these initial pleadings to cite sufficient statutory and case law basis to overcome a Civil Rule 12 motion to dismiss on the pleadings, Plaintiff will move for such leave." (R. at 126.) KBER similarly contends that it asked for leave to amend on July 27, 2022. The record shows that KBER informed the trial court that it would again ask leave to amend, "if the Court determines such amendment is needed." (R. at 303.)

In short, contrary to KBER's contention that the trial court denied it the opportunity to amend its complaint, the record reveals that KBER never actually followed up on its allusions to amendment in the record with a bona fide request or motion to amend its complaint under CR 15.01. Instead, KBER

addressed the trial court on this matter in exclusively hypothetical terms – "*if* it is necessary" or "*if* the Court determines" – without ever actually making the request itself and without ever receiving a negative response from the trial court. "The appellate court reviews for errors, and a nonruling is not reviewable when the issue has not been presented to the trial court for decision." *Jones v. Livesay*, 551 S.W.3d 47, 52 (Ky. App. 2018) (quoting *Turner v. Commonwealth*, 460 S.W.2d 345, 346 (Ky. 1970)). Accordingly, we decline KBER's invitation to find fault with the trial court on this issue.

As a final note upon the merits of this case, it appears that the ultimate aim of KBER's appeal is one in which we are asked to override a legislative decision made by Midway's city council. We are not at liberty to "second-guess the judgment of local government officials," *Jameson*, 215 S.W.3d at 35, without some showing that the action was arbitrary. As previously noted, the test for arbitrariness is "(1) whether an action was taken in excess of granted powers, (2) whether affected parties were afforded procedural due process, and (3) whether determinations are supported by substantial evidentiary support." *Hilltop Basic Resources, Inc.*, 180 S.W.3d at 467. It was within Midway's power to approve or deny sewer access, *see Greenway Enterprises, Inc.*, 148 S.W.3d at 302, and Midway made its decision after public hearings in which KBER participated. "The fundamental requirement of procedural due process is simply that all affected

parties be given 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Hilltop Basic Resources, Inc.*, 180 S.W.3d at 469 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976)). The first two elements of the test are readily met in this case.

The third element of the test asks whether Midway's decision was supported by substantial evidence. "Substantial evidence means evidence that is sufficient to induce conviction in the minds of reasonable people." *Smith v. Teachers' Retirement System of Kentucky*, 515 S.W.3d 672, 675 (Ky. App. 2017) (citation omitted). Midway's city council made its decision after a public hearing in which a significant number of residents expressed opposition to KBER's project and outlined how the size and scope of the project would negatively affect their lives. This testimony amounted to substantial evidence. Based on these considerations, Midway did not exercise arbitrary authority in denying sewer services outside its municipal boundary to KBER.

## IV. CONCLUSION

For the foregoing reasons, we affirm the trial court's order granting dismissal pursuant to CR 12.02.


ALL CONCUR.

BRIEFS FOR APPELLANTS:

W. Henry Graddy, IV
Dorothy T. Rush
Versailles, Kentucky

BRIEF FOR APPELLEE CITY OF MIDWAY:

Sharon L. Gold
Thomas E. Travis
Lexington, Kentucky